[Civ. No. 40140. Second Dist., Div. Two. Jan. 23, 1973.]

HERMINE BECK et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF BEVERLY HILLS et al.,
Defendants and Respondents.

**COUNSEL**

Joseph J. Rose for Plaintiffs and Appellants.

Allen Grimes, City Attorney, John J. O'Connor and Mitchel B. Kahn, Assistant City Attorneys, for Defendants and Respondents.

**OPINION**

**COMPTON, J.**—Plaintiffs who are residents of the City of Beverly Hills by this action seek to enjoin the city council and various city officials from proceeding to fluoridate the municipal water supply.

The case reaches us on an appeal by the plaintiffs from a judgment of dismissal entered following the sustaining of a demurrer without leave to amend the second amended complaint.

On July 21, 1970, the Beverly Hills City Council adopted Resolution No. 70-R-4147 authorizing the addition of fluoride to the city's water supply. The resolution noted that the California State Board of Public Health had adopted the policy of approving controlled fluoridation of community water supplies as a valuable public health measure in reducing the occurrence of dental caries.

Following recitation of the demonstrated effectiveness and safety of fluoridation during the past quarter century in the United States, the council resolved to add fluoride to their water supply by authorizing the water department ". . . to apply to the State Board of Public Health for an amendment to the water permit of the City of Beverly Hills to allow the addition of fluoride to the water supply of the City of Beverly Hills in order to maintain in the City's water distribution system the optimum fluoride content designated in the amended permit and in the event said permit is so amended, to acquire and construct the necessary facilities . . . ."

Throughout their unsuccessful attempts to survive a demurrer, plaintiffs have variously alleged that the city council abused its discretion because (1) federal and state government has preempted the field, (2) the city council failed to permit adequate opportunity for the opposition to be heard, (3) the city water supply already contains the optimum effective fluoride dosage, and (4) fluoridation of a public water supply violates the California Pharmacy Law and the Federal Food, Drug and Cosmetic Law.

Narrowed to its most concise and basic elements the complaint in essence alleges that the city council's procedure in adopting the resolution was improper and that fluoride, because it is a poison, may not be introduced into a public water supply without a prescription.

## THE LAWFULNESS OF FLUORIDATION

With respect to the claimed violation of state law in the fluoridation of a public water supply plaintiff points to the fact that fluorides have been listed under the Schedule of Poisons contained in section 4160, subdivision (c) of the Business and Professions Code. According to section 4161 such poisons must not be sold or furnished unless a poison or caution label is affixed, nor can they be sold to a person under 18 years of age (§ 4164). Wholesalers who sell to an ". . . established legitimate user in the chemical and technical arts" are exempt from the regulation (§ 4170). The act does not apply to sales on prescription (§ 4173).

"Fluorides intended, designed or recommended for internal use, or including directions for internal use, may be sold only on prescription, provided however that this regulation shall not apply to soluble fluorides labeled and sold in compliance with the provisions of Article 7, Chapter 9 of the Business and Professions Code." (Cal. Admin. Code, tit. 16, § 1748.1, Cal. Pharmacy Rules and Regulations.)

Of course, the foregoing regulate the sale and distribution of fluorides in their basic state and prior to their dilution. Those provisions do not regulate the sale or distribution of water. Plaintiff does not allege that acquisition of fluoride by the city has been or will be other than in compliance with the state law. The same can be said of the federal law. (*Froncek* v. *City of Milwaukee,* 269 Wis. 276 [69 N.W.2d 242]; see also 17 Fed. Reg. 6732 (July 23, 1952).)

On the other hand Health and Safety Code, division 5, part 1, chapter 7, contains an extensive scheme for regulation of the distribution of water, which scheme gives to the State Board of Public Health the responsibility of insuring

the purity and potability of water furnished for domestic use. This responsibility is discharged through a system of permits and inspections and by enforcement of Health and Safety Code section 4031 which provides: "It is unlawful for any person to furnish or supply to a user water used or intended to be used for human consumption or for domestic purposes which is impure, unwholesome, unpotable, polluted, or dangerous to health."

Chemicals, which in their concentrated or basic state may be poisonous, are often introduced into water for the purpose of purification.

Plaintiffs have not alleged any facts indicating that the city or the State Board of Health have permitted or intend to permit the distribution of water which is impure or dangerous to the public health. The resolution itself directs that a permit be obtained from the State Board of Public Health before any steps are taken to fluoridate the water. We cannot presume that the board will act improperly or fail to perform its duty to insure that the condition of the water, as ultimately distributed, is one of purity and potability.

It appears that fluoridation of the water is not essential to its purification but is intended as a therapeutic measure.

While the statutory regulation of the quality of water furnished for human consumption is aimed at objectives of safety and potability rather than medication for therapeutic ends, it does not follow that the former precludes the congruent purpose of combating disease. (*Hughes* v. *City of Lincoln*, 232 Cal.App.2d 741 [43 Cal.Rptr. 306].)

Courts through the United States have uniformly held that fluoridation of water is a reasonable and proper exercise of the police power in the interest of public health. (43 Ops.Cal.Atty.Gen. 243; *deAryan* v. *Butler*, 119 Cal.App.2d 674 [260 P.2d 98]; *Kraus* v. *Cleveland*, 76 Ohio L.Abs. 214 [55 Ohio Ops. 36, 121 N.E.2d 311]; *Kaul* v. *Chehalis*, 45 Wn.2d 616 [277 P.2d 353]; *Froncek* v. *City of Milwaukee, supra; Dowell* v. *Tulsa* (Okla.) 273 P.2d 859 [43 A.L.R.2d 445].) The matter is no longer an open question.

█ Plaintiffs complain that the resolution was brought to life through an abuse of governmental discretion in the enactment process. They complain that because of a delay in reaching its decision the council which passed the resolution had a different composition from that which held hearings on the issue. This, the plaintiffs contend, is tantamount to no hearing at all. There is, however, no requirement that a public hearing be held prior to enactment of such a resolution. Any such irregularity, if it be one, cannot amount to an abuse of legislative discretion sufficient to war-

rant judicial intrusion. (*Monarch Cablevision, Inc.* v. *City Council,* 239 Cal.App.2d 206 [48 Cal.Rptr. 550]; *Franchise Tax Board* v. *Superior Court,* 36 Cal.2d 538 [225 P.2d 905].)

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 21, 1973.