[L.A. No. 30250. In Bank. Dec. 26, 1974.]

SAN DIEGO BUILDING CONTRACTORS ASSOCIATION et al.,
Plaintiffs and Respondents, v.
CITY COUNCIL OF THE CITY OF SAN DIEGO,
Defendant and Appellant.

206

COUNSEL

John W. Witt, City Attorney, and Thomas F. Calverley, Deputy City Attorney, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Dennis A. Antenore, Deputy Attorney General, Tully H. Seymour, City Attorney (Laguna Beach), William M. Wilcoxen, Webb, Welles, Isaac & Freedman, Webb & Isaac and James R. Webb as Amici Curiae on behalf of Defendant and Appellant.

White, Price, Peterson & Robinson, Paul A. Peterson, Peter P. Gamer and James B. Mehalick for Plaintiffs and Respondents.

Acret & Perrochet, Harry N. Zavos and James M. Baratta as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

TOBRINER, J.—In this case we must determine whether the voters of San Diego, and, more generally, the electors of any charter city in California, may validly enact a zoning ordinance through the initiative process. Plaintiffs, building contractor associations, contend that the provisions of both the San Diego City Charter and the "due process" clause of the federal Constitution preclude the city from adopting any zoning ordinance without affording all affected property owners "notice and hearing;" because the city's present initiative procedure contains no provision for such notice and hearing, plaintiffs assert that zoning ordinances cannot be adopted by initiative. Although the trial court agreed with plaintiffs and entered summary judgment in their favor, we have concluded that its decision was in error and, accordingly, we reverse.

As we explain, settled constitutional doctrine establishes that due

process requires "notice and hearing" only in quasi-judicial or adjudicatory settings and not in the adoption of general legislation. ■ Inasmuch as the zoning ordinance at issue here, establishing a uniform height limitation for buildings which may be erected along the city's coastline in the future, is unquestionably a general legislative act, the due process requirements of notice and hearing do not apply. Moreover, as we demonstrate, the provisions of the San Diego City Charter define the citizenry's fundamental right to initiate legislation in broad and generous terms and do not withhold the initiative power from zoning matters. Consequently, we conclude that citizens of San Diego may enact zoning ordinances by initiative and that the ordinance challenged in the instant case is valid.

In November 1972, the voters of the City of San Diego, a charter city, enacted an ordinance establishing a 30-foot height limitation for buildings which may be constructed within a prescribed coastal zone in the city.[1] The ordinance was adopted in accordance with the initiative procedure set forth in the San Diego City Charter and Elections Code, procedures authorized by article XI, section 5, of our state Constitution (*In re Pfahler* (1906) 150 Cal. 71 [88 P. 270]; *Morton* v. *Broderick* (1897) 118 Cal. 474, 487 [50 P. 644].) All parties agree that the prescribed initiative procedures were complied with in full.

Subsequent to the adoption of the ordinance, plaintiffs instituted the present action challenging on various grounds the validity of the ordinance. After a hearing, the trial court granted plaintiffs' motion for summary judgment, concluding that both the provisions of the San Diego City Charter and the due process clause of the Fourteenth Amendment to the United States Constitution prohibit the enactment of a zoning ordinance through the initiative process; the court enjoined the city from enforcing the ordinance. The City of San Diego appeals from the decision.

---

[1] The ordinance (No. 10896, submitted to the voters as Proposition D) provides: "Notwithstanding any section to the contrary, no building or addition to a building shall be constructed with a height in excess of thirty feet within the Coastal Zone of the City of San Diego. The words Coastal Zone, as used within this Ordinance, shall mean that land and water area of the City of San Diego from the northern city limits south to the border of the Republic of Mexico, extending seaward to the outer limit of city jurisdiction and extending inland to the location of Interstate 5 on January 1, 1971. This limitation shall not apply to that land area of the Coastal Zone bounded by National City on the south, San Diego Bay on the west and Laurel Street or the southwesterly projection of Laurel Street on the north.

"The base of measurement of the height shall be in accordance with the Uniform Building Code of 1970.

"Notwithstanding any section to the contrary, there shall be no exception to the provisions of this Ordinance."

1. *The provisions of the San Diego City Charter authorize the enactment of all ordinances, including zoning ordinances, through the initiative process.*

Plaintiffs initially contend that the San Diego City Charter itself precludes the enactment of a zoning ordinance by the initiative process. As we explain, we find this argument totally untenable.

Article III, section 11 of the San Diego City Charter vests all of the city's legislative powers in the city council "except such legislative powers as are reserved to the people by the Charter and the Constitution of the State. . . ." Article III, section 23 of the charter elaborates the people's reserved legislative powers, providing in broad terms: "The right to recall municipal officers and the powers of the initiative and referendum are hereby reserved to the people of the City. *Ordinances may be initiated;* and referendum may be exercised on any ordinance passed by the Council except an ordinance which by the provisions of this charter takes effect immediately upon its passage; and any elective officer may be recalled from office." (Italics added.)

Through these provisions, the charter establishes the right of the people to initiate ordinances on all legislative matters. The charter makes no exception for "zoning ordinances," as distinguished from any other exercise of the police power, and past cases establish beyond question that a charter's broad grant of the initiative and referendum powers clearly applies to zoning measures. (See, e.g., *Dwyer* v. *City Council* (1927) 200 Cal. 505, 511-515 [253 P. 932]; *Bayless* v. *Limber* (1972) 26 Cal.App.3d 463, 468-469 [102 Cal.Rptr. 647]; *Fletcher* v. *Porter* (1962) 203 Cal.App.2d 313, 322 [21 Cal.Rptr. 452].)

Although nothing in the charter provisions dealing with the city's legislative powers in general, or with the initiative procedure in particular, provides the slightest indication that zoning measures were intended to be exempted from the initiative process, plaintiffs argue that a remote provision of the charter impliedly precludes the use of the initiative in such matters. Article V of the charter, entitled "Executive and Administrative Services," contains a provision, section 41(c), which provides in relevant part: "The City Planning Commission shall be organized as provided by the laws of the State and have such powers and perform such duties as are prescribed by such laws." State law prescribes certain minimum procedures, including notice and hearing, to be followed by planning commissions generally (see Gov. Code, §§ 65150, 65854), and since San Diego's current initiative process does

not encompass such notice and hearing procedures, plaintiffs argue that section 41(c) impliedly precludes the use of the initiative in zoning matters.

This contention, however, completely overstates the reach of section 41(c). The subject of section 41(c) is the city planning commission, not the city council or the people of the city. The section does not purport to limit the power of the people in the exercise of the initiative power, nor does it prescribe any special legislative procedures to be followed by the city council in the area of zoning.[2] In short, the section simply governs the city planning commission's conduct of its affairs when that commission is authorized to act under the city charter; the section in no manner attempts to impinge on the people's initiative prerogative.[3]

■ Accordingly, we conclude that the San Diego City Charter authorizes the enactment of the challenged ordinance through the initiative process.

2. ■ *Under the "due process" clause of the United States Constitution, general zoning legislation may be enacted without affording affected landowners "notice and hearing."*

Plaintiffs contend, however, that even if the adoption of zoning measures by initiative is permitted by the San Diego City Charter, as we have held, such procedure directly conflicts with the due process clause

[2]In this latter regard, section 41(c) pointedly does not refer to specific state zoning law provisions prescribing duties and powers for city councils. (See, e.g., Gov. Code, §§ 65850, 65856.) Government Code section 65803 states: "The provisions of this chapter [chapter 4: Zoning Regulations] shall not apply to a chartered city, except to the extent that the same may be adopted by charter or ordinance of the city" and thus it is clear that the state statutory provisions relating to city councils are not applicable.

In 1971, Government Code section 65804 was amended to prescribe minimal procedural standards for the conduct of zoning hearings by local planning *agencies.* Section 65804 purports to apply to chartered cities as well as general law cities and counties, and one amicus argues that the section requires notice and hearing before any zoning ordinance may be enacted by a charter city. We need not reach the serious state constitutional issue presented by the amicus' interpretation of the section (see *Fletcher* v. *Porter, supra,* 203 Cal.App.2d 313, 320-321) in this case, however, because the section by its terms only purports to set standards for hearings held by local planning *agencies* (i.e., administrative bodies (see Gov. Code, § 65100)) and does not purport to establish mandatory procedures to be followed before any zoning ordinance may be enacted.

[3]Moreover, even if section 41(c) could conceivably be viewed as creating an "implicit" conflict with the charter provisions relating to the initiative power, the authorities clearly indicate that the people's right to initiate legislation would take precedence. "[The] power of initiative must be liberally construed . . . to promote the democratic process." (*Farley* v. *Healy* (1967) 67 Cal.2d 325, 328 [62 Cal.Rptr. 26, 431 P.2d 650]; *Blotter* v. *Farrell* (1954) 42 Cal.2d 804, 809 [270 P.2d 481].)

of the United States Constitution. Relying on statements in numerous recent decisions declaring that the "root requirement [of the due process clause is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest" (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 379 [28 L.Ed.2d 113, 119, 91 S.Ct. 780] (fn. omitted); see *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011]; *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]), plaintiffs assert that because the challenged zoning ordinance significantly affects their real property rights, they had a constitutional right to "notice and hearing" before the zoning law was enacted. Since San Diego's initiative procedure does not afford to affected landowners such "notice and hearing," plaintiffs conclude that the enactment of the instant zoning ordinance violated their constitutional rights.

Plaintiffs' entire due process argument, however, is founded on an erroneous premise. From the inception of this nation's legal system, statutes of general application have regularly been enacted without affording each potentially affected individual notice and hearing. As we shall explain, it is black letter constitutional law that due process requires "notice and hearing" only in quasi-judicial or adjudicatory settings and not with respect to the adoption of general legislation. Since the enactment of the instant general zoning ordinance through the initiative process was unquestionably a legislative, as distinguished from adjudicative, act, the constitutional requirements of "notice" and "hearing" do not apply.

Justice Oliver Wendell Holmes, writing for a unanimous United States Supreme Court in *Bi-Metallic Co.* v. *Colorado* (1915) 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141], clearly articulated the due process principles that govern the instant case. Justice Holmes declared: "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." California courts have uniformly adhered to the constitutional teaching of the *Bi-Metallic* decision, repeatedly reaffirming that "[t]here is no constitutional requirement for any hearing in a quasi-legislative proceeding." (*Franchise Tax Board* v. *Superior Court* (1950) 36 Cal.2d 538, 549 [225

P.2d 905]; see, e.g., *Beck* v. *City Council of Beverly Hills* (1973) 30 Cal.App.3d 112, 115 [106 Cal.Rptr. 163]; *California Grape etc. League* v. *Industrial Welfare Com.* (1969) 268 Cal.App.2d 692, 708-709 [74 Cal.Rptr. 313].)

Plaintiffs, in relying upon the recent procedural due process decisions represented by *Boddie* v. *Connecticut, supra,* 401 U.S. 371 and similar cases, neglect the fundamental difference between such cases and the present matter; the decisions applying the due process requirements of notice and hearing have all involved governmental decisionmaking in an *adjudicative* setting, in which the government's action affecting an individual was determined by facts peculiar to the individual case;[4] the present matter, by contrast, involves the adoption of a broad, generally applicable, *legislative* rule. The seminal decisions of the United States Supreme Court clearly indicate that the due process requirements of notice and hearing are applicable only to governmental actions of an adjudicatory nature. In *Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652], for example, Justice Jackson declared: "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property *by adjudication* be preceded by notice and opportunity for hearing appropriate to the nature of the case." (Italics added.) (See, e.g., *Boddie* v. *Connecticut, supra,* 401 U.S. 371, 377-378 [28 L.Ed.2d 113, 118-119]; *Ownbey* v. *Morgan* (1921) 256 U.S. 94, 110-111 [65 L.Ed. 837, 845-846, 41 S.Ct. 433].)

The San Diego ordinance challenged in the instant action is unquestionably a general legislative act. We are thus not faced in the instant case with any of the great number of more limited "administrative" zoning decisions, such as the grant of a variance or the award of a conditional use permit, which are adjudicatory in nature[5] and which thus involve entirely different constitutional considerations. Instead we review

---

[4]Thus, for example, *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] involved a governmental determination as to the revocation of an individual's parole status, *Goldberg* v. *Kelly, supra,* 397 U.S. 254 concerned a decision as to the termination of an individual recipient's welfare grant, *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586] addressed a proceeding adjudicating the revocation of an individual's driver's license and *Sniadach* v. *Family Finance Corp., supra,* 395 U.S. 337 involved the garnishment of an individual debtor's wages. None of the decisions involved governmental enactment of a general legislative rule.

[5]"It is long settled law that the enactment of a zoning ordinance is purely a legislative act. . . . It is to be distinguished from the granting or denial of a variance, a conditional use permit or an exception to use, all of which call for administrative action. . . ." (*Tandy* v. *City of Oakland* (1962) 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429]; see, e.g., *Topanga*

the enactment of legislation of the classic mold, establishing a broad, generally applicable rule of conduct on the basis of a general public policy. Under the established constitutional principle noted above, notice and hearing have never been constitutional prerequisites for the adoption of such a legislative enactment. (See generally 1 Davis, Administrative Law (1958) §§ 7.04, 7.06, pp. 420-426, 429-432. See also *United States* v. *Florida East Coast R. Co.* (1973) 410 U.S. 224, 244-245 [35 L.Ed.2d 223, 238-239, 93 S.Ct. 810].)

Plaintiffs contend, however, that there is an exception to this established constitutional principle in the case of "zoning" legislation; they urge that zoning measures, unlike all other legislation, can only be adopted after notice and hearing to all affected landowners. ■ The justification for this asserted exception appears to be that zoning measures frequently have a substantial impact on real property values. This characteristic of zoning measures, however, does not warrant differential treatment for a number of reasons.

In the first place, although zoning measures frequently do significantly affect real property values, this attribute does not distinguish such measures from a host of other legislative enactments which may have an equally important impact on those values. For example, legislative decisions as to the location of public improvements, the standards of building and health and safety codes, or the level of property tax rates all have considerable direct effect on land values; moreover, even such basic legislative policy decisions as the level of educational expenditures may have substantial indirect effect on property values. Plaintiffs suggest no reasons why zoning measures should invoke different constitutional procedures than any of these other legislative matters.

Second, and even more fundamentally, plaintiffs fail to explain why legislation which has a significant impact on real property rights and real property values should be differentiated from legislation which significantly affects other rights or other values. The due process clause of our federal Constitution applies uniformly to deprivations of *"life, liberty or property,"* and the time has long past when property rights were exalted over our citizens' rights in life or liberty. Legislative enactments are continually adopted which significantly affect individuals' "life or liberty;" trades and professions are subjected for the public good to

*Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12] (grant of variance a quasi-judicial, administrative act); *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 834 [323 P.2d 71] (grant of use permit an administrative act); *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 74 [187 P.2d 686] (same).)

complex regulations limiting the liberty to engage in such occupations, and sharp business practices are continually regulated through criminal statutes. If such legislative measures can be enacted without affording affected individuals notice and hearing, as plaintiffs concede, plaintiffs cannot reasonably contend that notice and hearing are constitutional prerequisites for zoning legislation.

Indeed, the authoritative decisions of the United States Supreme Court clearly demonstrate that the constitutional principle permitting the enactment of legislation without notice and hearing is as applicable to legislation affecting the value of real property as to any other legislation. The *Bi-Metallic* decision itself, for example, involved a landowner's challenge to an order of the State Board of Equalization increasing the valuation of all taxable property in the City of Denver by 40 percent. Such an increase, of course, unquestionably significantly affected property values in Denver, and plaintiff postulated the invalidity of the order on the failure to afford him an opportunity to be heard prior to its adoption. Justice Holmes, writing for a unanimous court, rejected the landowner's contention in no uncertain terms: "The question . . . is whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned—here, for instance, before a superior board decides that the local taxing officers have adopted a system of undervaluation throughout a county. . . . *The answer of this court in the State Railroad Cases* [(1875)] *92 U.S. 575 . . . was that it was hard to believe that the proposition was seriously made.*" (Italics added.) (239 U.S. at p. 445 [60 L.Ed. at p. 375].)

Moreover, in rejecting out-of-hand the plaintiff's contention that a quasi-legislative order of an administrative board was void for lack of notice or hearing, the *Bi-Metallic* court indicated that it was *even clearer* that an actual legislative act could be adopted without such notice or hearing, even if such legislation seriously affected property rights. Justice Holmes wrote: "General statutes within the state power are passed that affect the person *or property* of individuals, *sometimes to the point of ruin,* without giving them a chance to be heard. . . . If the result in this case had been reached as it might have been by the State's doubling the rate of taxation, *no one would suggest that the Fourteenth Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it. . . .*" (Italics added.) (239 U.S. at p. 445 [60 L.Ed. at p. 375].)

The teaching of *Bi-Metallic* was reaffirmed in *Bowles* v. *Willingham* (1944) 321 U.S. 503 [88 L.Ed. 892, 64 S.Ct. 641], a case involving the

validity of a rent control statute. In *Bowles* a federal law authorizing the Director of the Office of Price Administration to establish maximum permissible rents was challenged, inter alia, on procedural due process grounds. Plaintiff landlords claimed that the act was unconstitutional because it permitted the adoption of a maximum rent schedule, inevitably affecting the value of their property, without affording them notice and hearing. The *Bowles* court, noting the quasi-legislative nature of the administrative rent schedule, rejected the plaintiffs' due process contention and, as in *Bi-Metallic,* cited the enactment of legislation as an a fortiori illustration of a situation in which there is no constitutional requirement of notice or hearing. The *Bowles* court stated in this regard: "Obviously, Congress would have been under no necessity to give notice and provide a hearing before it acted, had it decided to fix rents [itself] on a national basis the same as it did for the District of Columbia. See 55 Stat. 788." (321 U.S. at p. 519 [88 L.Ed. at p. 906].)

Ignoring these governing constitutional decisions, plaintiffs cite a string of California cases which they contend establish the constitutional principle that notice and hearing are required before zoning legislation may be enacted. Upon analysis, however, it is clear that the cited cases are not authoritative precedent for plaintiffs' contention.

*Hurst* v. *City of Burlingame* (1929) 207 Cal. 134 [277 P. 308] is the seminal decision in the line of cases relied upon by plaintiffs. In *Hurst,* the electors of the City of Burlingame, a general law city, enacted a comprehensive zoning ordinance pursuant to the initiative procedure established by state statute. (See Cal. Const., art. IV, § 25.) Plaintiff in *Hurst* contended that the measure was invalid because it had been adopted without compliance with the procedural requirements of notice and hearing contained in the state Zoning Act; plaintiff argued that since the city's entire power to enact a zoning ordinance stemmed from the grant of authority contained in the Zoning Act, any zoning ordinance which the city adopted had to be enacted pursuant to the mandatory procedures established by the act.

The *Hurst* court, applying the general rule that the initiative power is coextensive with the general legislative authority of a governmental entity, agreed with plaintiff and held that since the city's legislators could not enact a zoning ordinance without complying with the Zoning Act's procedural requirements, the voters had no power to circumvent the statutory procedures through the initiative process. The court concluded that the state Zoning Act, constituting a specific statute directed to the

procedure for enacting zoning measures, took precedence over the more general initiative statute.

Thus, the *Hurst* decision rests exclusively on a matter of statutory interpretation; its holding does not rely on constitutional principles at all. One possibly ambiguous passage of the *Hurst* decision, however, sowed the seeds of plaintiffs' present confusion. That passage of *Hurst,* located in the middle of the opinion's statutory analysis, reads as follows: "When the statute requires notice and hearing as to the possible effect of a zoning law upon property rights the action of the legislative body becomes *quasi* judicial in character and the statutory notice and hearing then becomes necessary in order to satisfy the requirements of due process and may not be dispensed with." (207 Cal. at p. 141.) This passage, however, states only that notice and a hearing are necessary *when required by statute* and implicitly supports the constitutional principle reviewed above by suggesting rather clearly that when there is no such statutory requirement the adoption of a general zoning law remains a legislative act, as to which due process does not require notice and hearing. Because the instant case involves the adoption of a zoning ordinance by a charter city, to which the state Zoning Act does not apply (see Gov. Code, § 65803), the *Hurst* decision lends no support to plaintiffs' position.

 Although, when closely analyzed, it is clear that *Hurst* neither held nor implied that in the absence of an applicable statute due process requires notice and hearing before zoning legislation may be enacted, a few subsequent cases have misconstrued the carefully limited language of *Hurst* as articulating the broad, constitutional rule advocated by plaintiffs. The one distinctive feature of these few decisions, however, is that in every case the erroneously broad rendition of *Hurst*'s holding has been pure dictum.[6] To the extent that such statements are inconsistent with our present opinion they are disapproved.

[6]In *City of Escondido* v. *Desert Outdoor Advertising, Inc.* (1973) 8 Cal.3d 785, 790 [106 Cal.Rptr. 172, 505 P.2d 1012], for example, we held that the plaintiff-general law city's anti-billboard ordinance was a valid enactment which did not fall within the aegis of the state Zoning Act, and then gratuitously suggested in dictum, citing *Hurst,* that in zoning matters the statutory procedures were constitutionally required. And in *Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 391 [60 P.2d 847], our court held that because the Legislature had not authorized the district to enact zoning laws, the district possessed no such authority; the *Gilgert* court buttressed this holding by suggesting in dictum that the lack of a notice or hearing mechanism also precluded the district from creating such zones.

The *Gilgert* dictum was based in large measure upon similar dictum in the earlier Court of Appeal decision of *Berrata* v. *Sales* (1927) 82 Cal.App. 324, 327 [255 P. 538], which suggested that due process requires "notice" in these circumstances only after

Plaintiffs also rely heavily on this court's recent decision in *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137], but that decision is entirely inapposite to the instant matter. In *Scott,* the zoning matter at issue did not involve the enactment of a general legislative zoning ordinance, as here, but instead an administrative determination by a local planning commission on an application for a conditional use permit for a particular parcel of land. Because of the administrative, adjudicatory nature of the use permit procedure at issue in *Scott* (see fn. 5, *supra*), both statutory and constitutional provisions called for notice and hearing; the only issue in the case turned on whether the city could give such notice and hearing to adjoining landowners who resided within the city, but deny such notice and hearing to similarly affected adjoining landowners who lived outside the city boundaries. We held in *Scott* that "the City of Indian Wells owes adjoining landowners who are not city residents a duty of notice to the extent given similarly situated city residents. . . ." (6 Cal.3d at p. 549.)

The *Scott* decision provides absolutely no authority for plaintiffs' contention that due process requires notice and hearing before a legislative zoning ordinance may be adopted; indeed, *Scott* explicitly recognizes that the due process requirements of notice and hearing adhere only in adjudicative settings, such as the grant of a conditional use permit presented by the facts of that case. In summarizing the applicable constitutional principles, the *Scott* court declared: "[T]he due process clause of the Fourteenth Amendment requires 'at a minimum . . . that deprivation of life, liberty or property *by adjudication* be preceded by notice and opportunity for hearing. . . .' [Citation]." (Italics added.) (6 Cal.3d at p. 549, quoting *Mullane* v. *Central Hanover Tr. Co.. supra,* 339 U.S. at p. 313 [94 L.Ed. at p. 873].)

Thus, plaintiffs' due process contention is not supported by past California decisions. Indeed, the very contrary obtains. All of the California authorities which have directly faced the constitutional issue posed by the instant case have uniformly concluded that zoning legislation, as all other legislation, may constitutionally be enacted without affording all affected individuals notice and hearing. (See *Duran*

first holding that notice was actually required by an applicable statute. Indeed, almost all of the decisions—both in California and from our sister states—relied upon by plaintiffs follow the pattern of the *Berrata* decision; the decision in each of these cases has been based specifically on an applicable statute and discussion of constitutional requirements has been pure dictum. (See *Taschner* v. *City Council* (1973) 31 Cal.App.3d 48 [107 Cal.Rptr. 214]; *People's Lobby, Inc.* v. *Board of Supervisors* (1973) 30 Cal.App.3d 869 [106 Cal.Rptr. 666]; cf. *Cugini* v. *Chiaradio* (1963) 96 R.I. 120 [189 A.2d 798]; *Hart* v. *Bayless Investment & Trading Co.* (1959) 86 Ariz. 379 [346 P.2d 1101].)

v. *Cassidy* (1972) 28 Cal.App.3d 574, 583-586 [104 Cal.Rptr. 793]; *Bayless* v. *Limber, supra,* 26 Cal.App.3d 463, 469-470; cf. *Dwyer* v. *City Council, supra,* 200 Cal. 505, 516; *Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 777-778 [7 Cal.Rptr. 805].) For the reasons reviewed above, we reaffirm this established line of authority.

In sum, we conclude that neither the Constitution nor the San Diego City Charter precludes the people of San Diego from enacting a general zoning ordinance through the initiative process.

The judgment is reversed.

Wright, C. J., Sullivan, J., and Files, J.,* concurred.

**BURKE, J.**†—I dissent. This case concerns the important question whether municipal zoning ordinances and other measures substantially affecting or restricting land use properly may be enacted through the initiative process, without providing affected property owners with the traditional due process safeguards of notice and hearing. I would hold that the initiative process as presently designed affords constitutionally inadequate protection to property owners, and that the essential demands of due process of law under the state and federal Constitutions may be satisfied only by a zoning procedure which incorporates some provision for notice and hearing in addition to the minimum opportunities available under the initiative election process itself.

It has long been the rule in this state that, *as to general law cities or counties,* the initiative process does not provide an adequate substitute for compliance with the state zoning law (Gov. Code, § 65800 et seq.), and particularly those provisions prescribing the requisite notice and hearing to be afforded to affected property owners. (*Hurst* v. *City of Burlingame,* 207 Cal. 134 [277 P. 308]; *Johnston* v. *City of Claremont,* 49 Cal.2d 826, 837 [323 P.2d 71]; *Laguna Beach Taxpayers' Assn.* v. *City Council,* 187 Cal.App.2d 412, 415 [9 Cal.Rptr. 775]; *People's Lobby, Inc.* v. *Board of Supervisors,* 30 Cal.App.3d 869, 872-873 [106 Cal.Rptr. 666]; *Taschner* v. *City Council,* 31 Cal.App.3d 48, 61-64 [107 Cal.Rptr. 214].)

The preceding cases are based in part on the premise that general law cities and counties are governed by the provisions of the state zoning laws, which laws take precedence over the more general scope of

*Assigned by the Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

initiative legislation. As stated in *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, 141, "The initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance. The Zoning Act is a special statute dealing with a particular subject and must be deemed to be controlling over the initiative, which is general in its scope."

The majority herein take the position that the rule of the foregoing cases does not apply to *charter* cities or counties which are not bound by the provisions of the state zoning laws.[1] Indeed, this position finds some support in the cases. (See *Fletcher* v. *Porter,* 203 Cal.App.2d 313, 320-323 [21 Cal.Rptr. 452]; *Bayless* v. *Limber,* 26 Cal.App.3d 463, 469 [102 Cal.Rptr. 647]; *Duran* v. *Cassidy,* 28 Cal.App.3d 574, 583-585 [102 Cal.Rptr. 647].) As stated in *Bayless* (p. 469), distinguishing *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, and *Laguna Beach Taxpayers' Assn.* v. *City Council, supra,* 187 Cal.App.2d 412, ". . . respondents overlook the decisive fact that these cases involved general law cities while this case is concerned with a chartered city. In those cases it was held that zoning may not be done by initiative because the procedure leading to the enactment of an initiative ordinance is incompatible with that prescribed by statute for the enactment of zoning ordinances by a city council. . . . But the manner of enacting municipal ordinances is a municipal affair and, as previously indicated, the charter of a chartered city, rather than state statutes, govern municipal affairs within such a city. [Citation.] Moreover, ordinarily, there can be no implied limitations upon chartered powers concerning municipal affairs. [Citation.]"

In my view, the *Bayless* decision, *supra,* was premised upon the incorrect assumption that statutory provision for notice and hearing in zoning matters is a matter of legislative policy, rather than constitutional mandate. The majority seem to concede that if notice and hearing are essential elements of due process of law, even charter cities are powerless to ignore them. I turn then to an analysis of the question whether constitutional principles require some provision for notice and hearing before zoning measures may be adopted. Subsequently, I discuss whether the initiative process itself furnishes sufficient protection to

---

[1] Government Code section 65803 provides that the provisions of the zoning laws shall not apply to a charter city except to the extent those laws may be adopted by charter or ordinance. Note, however, section 65804 (as amended in 1971), which specifies that even as to *charter* cities zoning agencies must develop rules of procedure for conducting public hearings "so that all interested parties shall have advance knowledge of procedures to be followed." The section also provides that a record of the hearing must be made, if requested. The section thus assumes, but does not expressly require, that charter cities will hold hearings on zoning measures.

affected property owners so that applicable constitutional principles are satisfied.

### 1. *Due Process and the Zoning Laws*

This court has frequently recognized that "the most fundamental ingredient of the 'due process' guaranteed by our state Constitution is 'a meaningful opportunity to be heard.'" (*Randone* v. *Appellate Department,* 5 Cal.3d 536, 550 [96 Cal.Rptr. 709, 488 P.2d 13], and cases cited.) On the other hand, we have acknowledged that " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. . . . Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." (*In re Tucker,* 5 Cal.3d 171, 179 [95 Cal.Rptr. 761, 486 P.2d 657], quoting from *Hannah* v. *Larche,* 363 U.S. 420, 442 [4 L.Ed.2d 1307, 1321, 80 S.Ct. 1502]; see *Sokol* v. *Public Utilities Commission,* 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265].)

Ordinarily, as the majority explain, if a proceeding is "legislative" rather than "adjudicative" in character, a hearing of a judicial type is not required by the Constitution. (*Franchise Tax Board* v. *Superior Court,* 36 Cal.2d 538, 549 [225 P.2d 905]; see *United States* v. *Florida East Coast R. Co.,* 410 U.S. 224, 244-246 [35 L.Ed.2d 223, 238-240, 93 S.Ct. 810]; *Bi-Metallic Co.* v. *Colorado,* 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141].) Although enactment of a zoning ordinance, contrasted with a grant of an easement or variance, may be characterized as a "legislative" act, nevertheless "A zoning ordinance can and does have a more direct and lasting effect upon property values and property owners within a city than almost any other type of ordinance. What is done with respect to one piece of property of necessity has an effect, good or bad, upon adjacent or nearby property." (*Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 837.)

Accordingly, our cases have long recognized the constitutional right of affected property owners to notice and hearing before a municipality may enact zoning ordinances which substantially restrict the use or otherwise substantially impair the value, of their property. (*City of Escondido* v. *Desert Outdoor Advertising, Inc.,* 8 Cal.3d 785, 790 [106 Cal.Rptr. 172, 505 P.2d 1012]; *Scott* v. *City of Indian Wells,* 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Gilgert* v. *Stockton Port District,* 7

Cal.2d 384, 391 [60 P.2d 847]; *Berrata* v. *Sales,* 82 Cal.App. 324, 327 [255 P. 538]; see Anderson, American Law of Zoning, § 4.03, p. 159, § 4.11, pp. 168-169; McQuillin, Municipal Corporations, § 25.261, pp. 212-213; Annot., 96 A.L.R.2d 449, 453, fn. 5.)[2]

For example, we have recently stated that "Zoning does not deprive an adjacent landowner of his property, but it is clear that the individual's interest in his property is often affected by local land use controls, and the 'root requirement' of the due process clause is 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid government interest . . . justifies postponing the hearing until after the event. . . .' [Citations.]" (*Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, 549.) We held in *Scott* that principles of due process of law required a city to provide notice and a hearing to nonresident adjacent landowners whose property would be affected by municipal zoning measures.[3] Thus, it would appear firmly established in our jurisprudence that the adoption of zoning measures which involve substantial deprivations of property may not take place in the absence of constitutionally adequate provision for prior notice and hearing. I consider, then, the question whether the initiative process affords adequate due process safeguards.

2. *Due Process and Zoning by Initiative*

Contrary to the majority's position herein, a number of cases have suggested that since the initiative process fails to afford adequate notice and hearing for affected property owners, it may not be constitutionally employed to adopt zoning measures which substantially affect the use of their land. (*People's Lobby, Inc.* v. *Board of Supervisors, supra,* 30 Cal.App.3d 869, 873-874; *Taschner* v. *City Council, supra,* 31 Cal.App.3d 48, 65-69; see *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, 141; *Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 836-837; *Chase* v. *Kalber,* 28 Cal.App. 561, 573-574 [153 P. 397]; McQuillin, *supra,* § 25.246, p. 168; *City of Scottsdale* v. *Superior Court,* 103 Ariz. 204 [439 P.2d 290, 293-294]; *Elliott* v. *City of Clawson,* 21 Mich.App. 363 [175 N.W.2d 821,

[2]For cases from other states setting forth this principle, see *Bell* v. *Studdard,* 220 Ga. 756 [141 S.E.2d 536, 539]; *Cugini* v. *Chiaradio,* 96 R.I. 120 [189 A.2d 798]; *Hart* v. *Bayless Investment & Trading Co.,* 86 Ariz. 379, [346 P.2d 1101]; *Vandervort* v. *Sisters of Mercy of Cincinnati,* 197 Ohio App. 153 [117 N.E.2d 51].

[3]To the same effect is *Gilgert* v. *Stockton Port District, supra,* 7 Cal.2d 384, 391, wherein we stated that "Zoning is the deprivation, for the public good, of certain uses by owners of property to which their property might otherwise be put, but before the owner may then be deprived of his property and the enjoyment thereof he is entitled to adequate notice and a hearing thereon."

828]; *Smith* v. *Township of Livingston,* 106 N.J. Super. 444 [256 A.2d 85], affd. 54 N.J. 525 [257 A.2d 698]; but see *Bayless* v. *Limber, supra,* 26 Cal.App.3d 463, 469-470; *Duran* v. *Cassidy, supra,* 28 Cal.App.3d 574, 585-586.)

As indicated above, the Court of Appeal in *Bayless* v. *Limber, supra,* 26 Cal.App.3d 463, 469-470, concluded that no denial of constitutional due process occurs when a charter city enacts a zoning ordinance by the initiative process. The court reasoned that "Due process in law-making is not the same as due process in the adjudication of controversies. [Citations.] Generally speaking, a hearing on a legislative matter is held for the purpose of informing the law makers regarding relevant facts and policy considerations; it is not held for the protection of individual rights, property or otherwise. [Citation.] . . . The electoral process itself normally provides both notice and an opportunity to be heard to all electors, by written arguments (see Elec. Code, § 4017) and otherwise. In our view neither the United States Constitution nor the California Constitution requires more. [Citations.]" The *Duran* case adopted *Bayless'* reasoning in this regard.

Yet as we have seen, prior cases of this court and the Courts of Appeal have established beyond reasonable dispute that the area of zoning is in a class by itself and presents real and tangible risks of deprivation of private property far beyond those involved in ordinary "legislative" measures. To protect the constitutional rights of the property owner the courts heretofore have insisted upon traditional due process safeguards of notice and hearing, safeguards which perform a function far beyond the simple one of "informing the lawmakers regarding relevant facts."[4] Thus, we necessarily must reach the ultimate question whether in fact the initiative process does provide constitutionally adequate notice and hearing, as was assumed in *Bayless* and *Duran.*

In my view the Court of Appeal in *Taschner* v. *City Council, supra,* 31 Cal.App.3d 48, correctly set forth the flaws in the *Bayless/Duran* analysis. In *Taschner,* the court explained at length the deficiencies of the initiative process when compared with the procedural safeguards specified in the state zoning laws (Gov. Code, § 65800 et seq.). As stated in *Taschner* (p. 64), "It is urged that interested persons can suffer no substantial injury because the election process itself provides the

[4]Contrary to *Bayless'* assumption that zoning hearings are held to inform the lawmakers, it is widely acknowledged that such hearings serve the independent purpose of affording property owners an opportunity to be heard. (Anderson, *supra,* § 4.11, p. 168.)

equivalent safeguards afforded by state zoning law procedures. We are unpersuaded. The kind of public debate on the merits of a proposed zoning measure afforded by the election process, including the limited opportunity for the submission of written arguments to the voters, cannot be equated with a dispassionate study, evaluation and report upon the proposal by a staff of planning experts (§ 65804), notice and hearing before the planning commission (§ 65854), written recommendation by the planning commission with reasons for its recommendation (§ 65855), and notice and hearing before the legislative body (§ 65856). Furthermore, it is common knowledge that election campaigns cost money and that the extent to which one may be heard in an election too often depends on the size of one's pocketbook whereas planning commissions and legislative bodies are required by law to afford all interested persons a full and fair hearing on the merits of their respective claims. Moreover, the election offers the voters but a single choice, to accept or reject the proposal in its entirety. The legislative body, however, is empowered to modify (as well as approve or reject) a recommendation of the planning commission thereby enabling it to consider and take into account in its actions the legitimate claims and suggestions of those who would be affected by the proposal even though they may represent but a small segment of the electorate."

The court concluded, consistent with the views I have expressed above, that some provision for notice and hearing comparable with the provisions of the state zoning laws is required as a matter of constitutional due process, at least whenever the zoning measure substantially affects land use.[5]

Thus, contrary to the statement in *Bayless* that the initiative election process affords adequate opportunity for notice and hearing, it is evident that in its present operation the initiative process fails to afford that degree of protection necessary to satisfy due process requirements under the state and federal Constitutions.[6] I do not, of course, suggest that it

---

[5]See also *People's Lobby, Inc.* v. *Board of Supervisors, supra*, 30 Cal.App.3d 869, 873, pointing out that, as a practical matter, "Zoning proposals should have the benefit of public hearings and professional study by the local government's planning staff so as to integrate the proposal with the other zoning ordinances and particularly the city or county land use master plan. Overall planning would be seriously crippled if the initiative process could be used in this field." See generally, Comment, 10 Cal.Western L. Rev. 105, discussing the legal and practical problems in zoning by initiative.

[6]By comparison, it has been held that the *referendum* process passes constitutional muster in this regard since the referendum election occurs *after* the adoption of the ordinance to be voted upon, and *after* the property owner has had his notice and hearing. (See *Johnston* v. *City of Claremont, supra*, 49 Cal.2d 826, 836-837; *Hurst* v. *City of Burlingame, supra*, 207 Cal. 134, 140; *Dwyer* v. *City Council*, 200 Cal. 505, 516 [253 P. 247]; *Taschner* v. *City Council, supra*, 31 Cal.App.3d 48, 62, fn. 10.)

would be impossible to modify the initiative process in such a manner as to provide adequate due process safeguards. The Legislature or the governing boards of local public entities might well develop an approach which strikes a proper balance between the rights of the affected property owners and the interests of the public in reserving the power to initiate legislation.[7]

In the instant case, however, it is apparent that the coastal zone initiative was adopted without providing plaintiffs and others similarly affected an adequate opportunity to be heard. San Diego's new building height restriction is undoubtedly a zoning measure[8] which could substantially affect plaintiffs' use of their land, and substantially decrease its value. (See *Taschner* v. *City Council, supra,* 31 Cal.App.3d 48, 60, involving a similar building height restriction.)

I would affirm the judgment.

McComb, J., and Clark, J., concurred.

Respondents' petition for a rehearing was denied February 19, 1975. Files, J.,* sat in place of Mosk, J., who deemed himself disqualified. McComb, J., and Clark, J., were of the opinion that the petition should be granted.

---

[7]See Comment, *supra,* 10 Cal.Western L.Rev. at pages 128-130, setting forth the author's recommended amendment to the state zoning law to permit zoning by initiative with provision for a modification hearing by the governing body after the initiative measure is adopted. See also *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, 141.

[8]I would leave open for further case development the precise definition of "zoning" under the rule I propose herein. For cases discussing the question whether a particular measure is a zoning measure requiring notice and hearing, see *Taschner* v. *City Council, supra,* 31 Cal.App.3d 48, 68-69; *Fletcher* v. *Porter, supra,* 203 Cal.App.2d 313, 324-325; *Laguna Beach Taxpayers' Assn.* v. *City Council, supra,* 187 Cal.App.2d 412. See also *South Gwinnett Venture* v. *Pruitt* (5th Cir.) 482 F.2d 389, distinguishing between a general zoning measure affecting the entire community and a more specific measure affecting a particular tract of land or disposing of a single petition for relief.

*Assigned by the Chairman of the Judicial Council.