[No. A105160. First Dist., Div. Four. Nov. 19, 2004.]

SAVE OUR SUNOL, INC., Plaintiff and Appellant, v.
MISSION VALLEY ROCK COMPANY et al., Defendants and Respondents.

## COUNSEL

Stephan C. Volker, Gretchen E. Dent and Joshua A. H. Harris for Plaintiff and Appellant.

Peter W. Davis, Stephen G. Blitch, Raymond A. Cardozo, Jayne E. Fleming, Dennis J. Herrera and Joshua Milstein for Defendants and Respondents Mission Valley Rock Company and City and County of San Francisco.

John Kerwin Smith and Robert Sakai for Defendant and Respondent City and County of San Francisco.

Lorenzo E. Chambliss, Senior Deputy County Counsel, for Defendant and Respondent County of Alameda.

OPINION

**SEPULVEDA, J.**—The voters of Alameda County (County) adopted an initiative in November 2000 amending the County General Plan governing land uses. The initiative, known as Measure D, was enacted to protect agriculture and open space. Among the initiative's many amendments to the general plan was the added requirement that County approval of new quarries outside an urban zone be sanctioned by the voters. Measure D exempts from its application preexisting legal land uses and rights to development. At the time of the initiative's adoption, a quarry project located in the County's rural Sunol Valley had been under development for years, and the County had already issued a surface mining permit for the project. (Pub. Resources Code, § 2770, subd. (a).) Following passage of Measure D, a Sunol Valley preservation group sued to enjoin the quarry project under Measure D. On cross-motions for summary judgment, the trial court found Measure D inapplicable because the Sunol Valley quarry project had already received County approval and was not a new quarry subject to voter approval. We agree that Measure D is inapplicable to the previously permitted quarry, and affirm the judgment.

FACTS[1]

Respondent City and County of San Francisco (San Francisco) owns most of Alameda County's 1,350-acre Sunol Valley, which San Francisco purchased in the 1930's as a water resource. San Francisco has leased some of its Sunol Valley lands for gravel quarrying since the 1960's, and about 500 acres are actively being mined. The project at issue here is another gravel surface mine upon San Francisco property located within Sunol Valley. Respondent Mission Valley Rock Company (Mission Valley Rock) has leased land from San Francisco and proposes to excavate 43 million tons of gravel and sand from a 162-acre portion of the site, to a depth of 200 feet. The quarry is scheduled to operate until around 2045, after which the gravel pit will be reclaimed as a water reservoir. Appellant Save Our Sunol, Inc. (SOS) is a community preservation group that opposes the quarry project.

A. *Development of the Sunol Valley quarry.*

Mission Valley Rock has mined in Sunol Valley since at least 1986. The County approved mining of approximately 145 acres in 1986, under a surface mining permit and reclamation plan (SMP) SMP-24, and approved expansion of that quarry by another 69 acres in 1990, under SMP-29. The current

---

[1] The statement of facts is based upon the parties' separate statements of undisputed facts and supporting evidence submitted on motions for summary judgment.

controversy concerns Mission Valley Rock's 1992 application to expand the SMP-29 quarry project to encompass about 240 acres, under SMP-32.

The County conducted a two-year environmental review of this proposed quarry pursuant to the California Environmental Quality Act (CEQA), and issued a final Environmental Impact Report (EIR) in December 1994, approving the SMP-32 quarry project. (Pub. Resources Code, § 21000 et seq.) Subject to certain conditions, the County Board of Supervisors approved commencement of the Sunol Valley quarry. Appellant SOS appealed the County's decision to the California Board of Mining and Geology, which rejected the appeal. (Pub. Resources Code, § 2775, subd. (a).) SOS also filed a petition for a writ of mandate to set aside SMP-32, alleging CEQA violations and inconsistency with the County general plan. (*Save Our Sunol v. County of Alameda* (May 21, 1997, A072054) [nonpub. opn.].) In May 1997, we affirmed judgment denying SOS's petition. (*Ibid.*)

Meanwhile, San Francisco was engaged in its own planning process for its Sunol Valley properties. San Francisco's planning process, begun in 1992, culminated in certification of a final EIR for the city's Alameda watershed management plan in August 2000. San Francisco's mayor signed a lease with Mission Valley Rock for the SMP-32 quarry property in November 2000, with an effective date of December 23, 2000.

Measure D was adopted in November 2000, after the County's approval of SMP-32 but before the start of excavation. Measure D went into effect on December 22, 2000. While no excavation had occurred before passage of Measure D, Mission Valley Rock had installed irrigation and landscaping, and incurred permitting, leasing, and bond expenses in excess of $2 million.

B. *Measure D provisions.*

Measure D amends the 1994 East County area plan, which is a component of the County's general plan governing land uses in eastern Alameda County. (See *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1251–1253 [2 Cal.Rptr.3d 739] [discussing Measure D in upholding initiative against challenge by home developers].) The stated purposes of the initiative are "to preserve and enhance agriculture and agricultural lands, and to protect the natural qualities, the wildlife habitats, the watersheds and the beautiful open spaces of Alameda County from excessive, badly located and harmful development." The text of the initiative submitted to the voters explains that Measure D "establishes a County Urban

Growth Boundary which will focus urban-type development in and near existing cities where it will be efficiently served by public facilities, thereby avoiding high costs to taxpayers and users as well as to the environment."

Measure D is 40 pages long and makes many general plan amendments impacting various land uses. The initiative's text alone addresses the subject of quarries. The ballot arguments and county counsel analysis presented to the voters are silent on the subject. In the text, quarries are treated in one finding and two policy statements. The initiative finds that quarries "are massive, ugly and environmentally harmful uses of land." The specific policies relating to quarries are as follows: "Policy 144: Except to the extent required by State law, no new quarry or other open-pit mine may be approved by the County outside the Urban Growth Boundary, unless approved by the voters of Alameda County. Excavation not adjacent to an existing quarry site and on the same or an adjoining parcel shall be regarded as a new quarry. [¶] Policy 144A: The quarry currently planned by the San Francisco Public Utility Commission in the Sunol area should not be established. If despite Policy 144 the quarry goes into operation, the County shall permit no related industrial or manufacturing uses, notwithstanding any other provision of the Initiative."

The initiative also contains a general provision concerning its scope: "Section 22. **Application** [¶] (a) This ordinance does not affect existing parcels, development, structures, and uses that are legal at the time it becomes effective. However, structures may not be enlarged or altered and uses expanded or changed inconsistent with this ordinance, except as authorized by State law. [¶] (b) Except to the extent there is a legal right to development, the restrictions and requirements imposed by this ordinance shall apply to development or proposed development which has not received all necessary discretionary County and other approvals and permits prior to the effective date of the ordinance." (Underscoring and boldface in original.)

## DISCUSSION

Our task when interpreting an initiative is to effectuate the electorate's intent. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901 [135 Cal.Rptr.2d 30, 69 P.3d 951].) That task is made difficult here by Measure D's ambiguous and conflicting text, and the lack of any ballot materials evidencing intent on the subject of quarries.

There is admittedly no ambiguity in Measure D's negative *attitude* toward quarries, and particularly the Sunol Valley quarry. Measure D finds that

quarries "are massive, ugly and environmentally harmful uses of land" and expresses dislike for the quarry that is the subject of this appeal: "The quarry currently planned by the San Francisco Public Utility Commission in the Sunol area should not be established." But Measure D also states that voter approval is required only for "new" quarries not previously "approved" by the County, and the County had issued a mining permit to the contested Sunol Valley quarry years before passage of Measure D. What, then, is the electorate's intent?

We conclude that the electorate intended a prospective application of Measure D to quarries not previously approved by the County through issuance of a mining permit. The electorate's general statement of opposition to quarries, and the Sunol Valley quarry in particular, must be reconciled with the initiative's specific provision limiting application of Measure D to the future approval of quarries.

A.  *The County "approved" the Sunol Valley quarry by issuing a mining permit.*

Laws do not operate retrospectively unless the enactors plainly intended them to do so. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) Here, Measure D's specific provision governing quarries provides no support for a retrospective application and, in fact, evinces an intention that the provision apply prospectively. Policy 144 provides that "no new quarry or other open-pit mine *may be approved* by the County outside the Urban Growth Boundary, unless approved by the voters of Alameda County." (Italics added.) Measure D also expressly exempts from its operation preexisting legal land uses and rights to development.

SOS conceded in the trial court that Measure D is not retroactive, but argued that the Sunol Valley quarry had not yet been "approved" within the meaning of Measure D, despite the County's issuance of a surface mining permit. SOS renews that argument on appeal.

The argument fails to appreciate the significance of a surface mining permit. Surface mining is regulated under the state Surface Mining and Reclamation Act of 1975 (SMARA) and associated state regulations. (Pub. Resources Code, § 2710 et seq.; Cal. Code Regs., tit. 14, § 3500 et seq.) SMARA devolves principal regulatory responsibility over surface mining to local public agencies, and SMARA is implemented here by the County as the lead agency. (Pub. Resources Code, §§ 2728, 2770, subd. (a), 2774, 2774.3; Alameda County Code, § 6.80.010 et seq.) With the limited exception of mining operations existing before SMARA's enactment, "no person shall

conduct surface mining operations unless a permit is obtained from, a reclamation plan has been submitted to and approved by, and financial assurances for reclamation have been approved by, the lead agency." (Pub. Resources Code, § 2770, subd. (a).)

Upon application for a surface mining permit, the County notifies the State Department of Conservation of the filing, conducts an environmental review under CEQA, investigates the project and seeks input from other agencies as necessary, prepares an analysis of the project, holds public hearings to consider the project, and issues a permit if the County concludes that the project complies with SMARA. (Alameda County Code, §§ 6.80.080, 6.80.091–6.80.094, 6.80.110, 6.80.140–6.80.170.) Periodic review of a surface mining permit is required, and a County-issued permit is conditioned upon compliance with that requirement. (Alameda County Code, § 6.80.190.) The County may also impose other conditions upon the permit. (Alameda County Code, § 6.80.180.) A surface mining permit is subject to revocation or suspension only "for cause," and only after notice and a hearing. (Alameda County Code, § 6.80.270; accord, Pub. Resources Code, § 2774.1, subds. (a) & (b).)

Plainly, the County "approves" a new quarry by issuing a surface mining permit. A surface mining permit is the indispensable requisite for operation of a quarry, and is issued only after extensive environmental review and policy considerations. Measure D provides that "no new quarry . . . may be approved by the County . . . unless approved by the voters of Alameda County." The contested Sunol Valley quarry was approved by the County when it issued a surface mining permit in 1994, years before Measure D's 2000 enactment, and thus is not required to receive voter endorsement.

Appellant SOS disputes this conclusion and argues that Measure D's phrase "approved by the County" contained in Policy 144 must be read in conjunction with a general provision on application of the initiative, which states: "Except to the extent there is a legal right to development, the restrictions and requirements imposed by this ordinance shall apply to development or proposed development which has not received all necessary discretionary County and other approvals and permits prior to the effective date of the ordinance."

SOS maintains that a quarry has not received County approval within the meaning of Policy 144 unless the quarry has received "all necessary discretionary County and other approvals and permits." SOS acknowledged in the

trial court that the general provision is so broad that it arguably encompasses within its terms all approvals and permits, both discretionary and ministerial, but SOS offered to limit the provision to discretionary approvals and permits.

SOS's offer is a recognition of the fact that a mining operation is subject to ongoing review, inspection, and approvals to ensure legal compliance. As County Planning Department staff observed in finding Measure D inapplicable to the Sunol Valley quarry, "[q]uarries are long-term projects that require periodic reviews and approvals of various kinds throughout the life of the project, generally over a period of decades, as called for in the conditions attached to the approval of the Surface Mining Permit." If Measure D were interpreted to require voter approval for every quarry outside the urban zone that had not received "all approvals and permits," then at least eight other quarries would be swept up by Measure D because all quarries operate with conditions attached to their permit requiring future approvals.

SOS posits a middle ground, where "approval" under Policy 144 is read to require all discretionary approvals and permits, but not ministerial approvals and permits. SOS argues that the Sunol Valley quarry was not "approved" at the time of the initiative's effective date, despite prior issuance of a surface mining permit, because several discretionary approvals had yet to be obtained. SOS maintains that (1) San Francisco's lease of quarry land was not effective until the day after the initiative became law; (2) Mission Valley Rock had not received an encroachment permit from the California Department of Transportation (Caltrans) for the planned installation of a gravel conveyor belt under Highway 680; (3) Mission Valley Rock had not entered into a streambed alteration agreement with the California Department of Fish and Game; and (4) Mission Valley Rock had not obtained from federal and state authorities an incidental take permit for endangered species.

SOS overlooks the important fact that Measure D's Policy 144 turns upon *County* approval: "no new quarry . . . may be approved by the County . . . unless approved by the voters of Alameda County." Assuming Measure D applies generally to development that has not received all discretionary approvals and permits prior to the effective date of the initiative, Policy 144 limits its provision to a subset of those developments—to quarries not approved by the County. Approvals by San Francisco, Caltrans, the California Department of Fish and Game, and federal and state authorities protecting endangered species are immaterial to application of Policy 144, which mandates voter endorsement only if the County has not previously approved the quarry.

B. *Measure D does not prohibit establishment of the Sunol Valley quarry.*

█   We are mindful of the voter's statement, in Measure D's Policy 144A, that the contested quarry "should not be established." However, that statement of preference must be reconciled with Policy 144's specific provision limiting Measure D's application to quarries not previously approved by the County. SOS does not argue otherwise, and seems to recognize that Policy 144A should not be read as a directive prohibiting establishment of the Sunol Valley quarry. Legislative acts, such as the amendment of a general plan, are subject to the initiative process but administrative or executive acts, such as the granting or denial of a conditional use permit, are not. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 776 [38 Cal.Rptr.2d 699, 889 P.2d 1019]; *San Diego Bldg. Contractors Assn. v. City Council* (1974) 13 Cal.3d 205, 212, fn. 5 [118 Cal.Rptr. 146, 529 P.2d 570].)   █   We must construe an enactment to preserve its constitutional validity, and we presume that the enactors understood the constitutional limits on their power and intended the enactment to respect those limits. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718].) Accordingly, we cannot read Measure D's Policy 144A as an administrative act to revoke Mission Valley Rock's mining permit, which would be beyond the powers of initiative.

Nor do we read another clause of Policy 144A as a revocation of that portion of Mission Valley Rock's permit authorizing the use of a conveyor belt to transport gravel from the Sunol Valley quarry permitted under SMP-32 to the existing SMP-24 quarry site for processing. Policy 144A provides, in relevant part: "If despite Policy 144 the quarry goes into operation, the County shall permit no related industrial or manufacturing uses, notwithstanding any other provision of the initiative." This language, like the language of Policy 144, is prospective. It therefore has no application to the gravel conveyor belt that was permitted by the County before the initiative's enactment.

We need not address the many alternative arguments against application of Measure D. The dispositive point is that Measure D is prospective and therefore does not apply to the Sunol Valley quarry that was approved by the County through issuance of a surface mining permit before the initiative's enactment.

## DISPOSITION

The judgment is affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.

A petition for a rehearing was denied December 10, 2004, and on December 3, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 23, 2005.