BILL LOCKYER Attorney General ANTHONY M. SUMMERS Deputy Attorney General
THE HONORABLE DEDE ALPERT, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:
With respect to a charter city that has an ordinance prohibiting the fluoridation of the city's water supply, (1) does state law requiring the fluoridation of public water systems supersede the city's ordinance when outside funds are made available to install and operate a fluoridation system, and if so, (2) what level of outside funding must be in place for a conflict to exist between state law and the city's ordinance?
 CONCLUSION
With respect to a charter city that has an ordinance prohibiting the fluoridation of the city's water supply, (1) state law requiring the fluoridation of public water systems supersedes the city's ordinance when outside funds are made available to install and operate a fluoridation system, and (2) sufficient outside funding to cover the capital and associated costs of installing a fluoridation system must be in place before a city must take action to install a fluoridation system and sufficient outside funding to cover operation and maintenance costs must be in place thereafter before a city must take action to operate the fluoridation system in any particular fiscal year.
 ANALYSIS
The state has adopted a comprehensive statutory scheme, the "California Safe Drinking Water Act" (Health Saf. Code, §§116275-116751; "Act"),[1] to assure the provision of pure and safe drinking water throughout the state. The Act assigns certain responsibilities to the Department of Health Care Services ("Department") with respect to the fluoridation of public water systems, including the adoption of implementing regulations (Cal. Code Reg., tit. 22, §§ 22:64433-22:64434).[2] Section116410 states in part:
 "(a) In order to promote the public health through the protection and maintenance of dental health, the department shall adopt regulations . . . requiring the fluoridation of public water systems. . . . The regulations adopted by the department shall take effect on January 1, 1997.
 "(b) The regulations shall include, but not be limited to, the following:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
 "(4) A schedule for the fluoridation of public water systems with at least 10,000 service connections, based on the lowest capital cost per connection for each system."
Section 116415 provides exemptions from the fluoridation requirements and is the focus of our analysis. Section116415 states:
 "(a)(1) A public water system is not required to comply with Section 116410, or the regulations adopted thereunder by the department, in either of the following situations:
 "(A) If the public water system is scheduled to implement a fluoridation program pursuant to paragraph (4) of subdivision (b) of Section 116410 and funds are not available to the public water system sufficient to pay the capital and associated costs from any source other than the system's ratepayers, shareholders, local taxpayers, bondholders, or any fees or charges levied by the water system.
 "(B) If the public water system has obtained the capital and associated funds necessary for fluoridation as set forth in subparagraph (A), however, in any given fiscal year (July 1-June 30) funding is not available to the public water system sufficient to pay the noncapital operation and maintenance costs described in subdivision (g) from any source other than the system's ratepayers, shareholders, local taxpayers, bondholders, or any fees or charges levied by the water system.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(g) Costs, other than capital costs, incurred in complying with this section and Section 116410, including regulations adopted pursuant to those sections, may be paid from federal grants, or donations from private foundations, for these purposes. Each public water system that will incur costs, other than capitalization costs, as a result of compliance with this section and Section 116410, shall provide an estimate to the department of the anticipated total annual operations and maintenance costs related to fluoridation treatment by January 1 of each year."
We are asked to consider the requirements of section116410, along with the exemptions contained in section 116415, where a charter city has adopted an ordinance prohibiting the fluoridation of the city's water supply. In examining these statutory provisions, we may rely upon well-established principles of statutory interpretation. When construing a statute, we are to "ascertain the intent of the Legislature so as to effectuate purpose of the law." (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382,387.) "Committee reports are often useful in determining the Legislature's intent." (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 646.) "Words used in a statute . . . should be given the meaning they bear in ordinary use." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735.) "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference. [Citations.]" (Dix v. Superior Court (1991) 53 Cal.3d 442, 460.)
1. State Law Supersedes the City's Ordinance
The first question to be addressed is whether the fluoridation requirements of section 116410 supersede the charter city's local ordinance prohibiting fluoridation. We conclude that is does. California Constitution, article XI, section 5, subdivision (a), provides:
 "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."
In 82 Ops.Cal.Atty.Gen. 165, 168-169 (1999), we recently explained the application of this constitutional provision:
 "Pursuant to this constitutional grant of authority, a charter city has supreme power over `municipal affairs,' consisting essentially of matters of internal or local concern, free from state legislative intervention. [Citations.]
 "With respect to whether a specific matter constitutes a `municipal affair,' no definitive definition may be given. [Citations.] In Pacific Tel. Tel. Co. v. City Cty. of San Francisco (1959) 51 Cal.2d 766, 771, the court observed:
 "`. . . [T]he constitutional concept of municipal affairs is not a fixed or static quantity. It changes with the changing conditions upon which it is to operate. What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state.'
 "In any event, `. . . the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs. . . .' [Citation.]
 "In California Fed. Savings Loan Assn. v. City of Los Angeles, supra, 54 Cal.3d 1, the Supreme Court identified four general steps to be taken in resolving an alleged municipal affairs conflict: (1) determine if there is a local concern, (2) identify the actual conflict, (3) find whether the matter is of statewide concern, and (4) consider whether the state statute is reasonably related to the resolution of the statewide concern. (Id., at pp. 16-17.) Ultimately, the particular facts will determine whether `the state has a more substantial interest in the subject than the charter city.' (Id., at p. 18.)" (Fn. omitted.)
Following this four-step approach in the present circumstances, we find first that the city in question would have an obvious legitimate interest in the quality of the water it supplies to its residents. In the absence of conflicting state legislation, the city may adopt an ordinance prohibiting the fluoridation of its supply of drinking water. (Hughes v. City of Lincoln (1965) 232 Cal.App.2d 741; see also Cal. Const., art. XI, § 7 [a city may make and enforce local, police, and sanitary laws].)
We next consider whether the city's ordinance conflicts with section116410's requirements. Here, we find that section116415 grants an exemption from the fluoridation requirements if the local agency does not have an "outside" source of funding for its fluoridation system. An outside source would be one that is other than "the system's ratepayers, shareholders, local taxpayers, bondholders, or any fees or charges levied by the water system" (§116415, subds. (a)(1)(A), (a)(1)(B).) The outside source would typically be a federal grant or a gift from a private foundation. (See § 116415, subd. (g).) Where an outside source of funding has been identified and made available in installing a fluoridation system, the city would have two years to complete installation under the Department's regulations. (Reg. 64433.) In such circumstances, state law would be in conflict with the city's ordinance prohibiting fluoridation. One requires fluoridation of the city's water supply, while the other prohibits it. Consequently, we must move to the third step of our four-step analysis and determine whether fluoridation of public water systems is a matter of statewide concern rather than being merely a "municipal affair."
The health of the citizens of the state is a matter of statewide concern and not the exclusive province of a municipality. The laws relating to fluoridation are specifically
directed to the "protection and maintenance of dental health." (§116410.) In Beck v. City Council of Beverly Hills (1973) 30 Cal.App.3d 112, the court concluded:
 "It appears that fluoridation of the water is not essential to its purification but is intended as a therapeutic measure.
 "While the statutory regulation of the quality of water furnished for human consumption is aimed at objectives of safety and potability rather than medication for therapeutic ends, it does not follow that the former precludes the congruent purpose of combating disease. [Citation.]
 "Courts through[out] the United States have uniformly held that fluoridation of water is a reasonable and proper exercise of the police power in the interest of public health. [Citations.] The matter is no longer an open question."
Relying upon Beck and the lines of cases which it cites, we conclude that section 116410's fluoridation requirements deal with a matter of statewide concern which the Legislature "may address by its own tailored enactments." (California Fed. Savings Loan Assn. v. City of Los Angeles (1991) 54 Cal.3d 1, 17.) We therefore turn to the final issue of whether section 116410 is reasonably related to the resolution of the statewide concern. (Ibid.) A statute requiring fluoridation of water delivered by public water systems is reasonably related to the state's concern with public health. The legislative history of section 116410 indicates that at the time the Legislature was considering whether to impose local fluoridation requirements, it was presented with evidence that water fluoridation presented a significant way "to prevent tooth decay, the most prevalent but most preventable and costly of oral health problems among all age groups." (Assem. Com. on Local Gov., Analysis of Assem. Bill. No. 733 (Apr. 12, 1995) p. 3.) The information before the Legislature also indicated that there was a national campaign by the United States Public Health Service to increase fluoridation of drinking water, that the Surgeon General endorsed fluoridation of community drinking water as an appropriate prevention strategy against tooth decay, and that there was no scientific issue as to the efficacy of fluoridation. (Id., at pp. 3-4.)
We thus conclude that the legislation requiring water fluoridation was reasonably related to the eradication of a major dental health problem. The Legislature was not prohibited from addressing the matter, and it narrowly tailored its enactment. When the exemptions of section116415 are not applicable, section116410 supersedes a conflicting ordinance enacted by a charter city. (See Northern Cal. Psychiatric Society v. City of Berkeley (1986) 178 Cal.App.3d 90.)
2. Outside Funding to Cover Costs
The second issue presented concerns the level of outside funding that is necessary to trigger the fluoridation requirements of section116410. We conclude that when sufficient outside funding becomes available to cover the capital and associated costs of installation, the city must install a fluoridation system regardless of its local ordinance. Thereafter, it must operate the fluoridation system in any fiscal year in which it has been given funding by an outside source to cover the costs of operating and maintaining the system.
There are two separate funding conditions that trigger compliance with the state fluoridation mandate. The first concerns the installation of a fluoridation system. Local compliance with that requirement is necessary when funds from an outside source become available "sufficient to pay the capital and associated costs" of the installation. (§116415, subd. (a)(1)(A).) The second concerns the operation of the fluoridation system. Compliance with the latter requirement is necessary "in any given fiscal year (July 1-June 30)" when funds from an outside source become available "sufficient to pay noncapital operation and maintenance costs." (§116415, subd. (a)(1)(B).)
It is readily apparent that the city in question need not undertake any activity until outside funds become available to install a fluoridation system. When that amount of money is tendered, the city must act. However, it need not operate the system once it is installed unless outside funds are thereafter provided in any given fiscal year to cover noncapital operation and maintenance costs.
The statutory requirements are spelled out in greater detail in the Department's regulations. Regulation 64433 provides:
 "(a) Any public water system with 10,000 service connections or more that does not have a fluoridation system shall install such a system pursuant to the requirements in this article if the Department identifies a source of sufficient funds not excluded by Health and Safety Code section 116415 to cover capital and any associated costs necessary to install such a system. Installation shall be completed within two years of the date the funds are received by the water system; the water system may apply to the Department for an extension of the deadline. Following installation, if the Department identifies a source of sufficient funds not excluded by Health and Safety Code section 116415
to cover the noncapital operations and maintenance costs for the period of a year or more, the system shall fluoridate within three months of receiving the funds and shall continue fluoridating so long as such funds are received.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(c) Any public water system required to install a fluoridation system pursuant to subsection (a) . . . shall annually submit an estimate of anticipated fluoridation operations and maintenance costs for the next fiscal year (July 1 through June 30) to the Department by the January 1 preceding that fiscal year.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(f) Any public water system with 10,000 service connections or more shall be exempted from fluoridation in either of the following cases:
 "(1) The water system does not receive sufficient funds from a source identified by the Department and not excluded by Health and Safety Code section 116415 to cover the capital and associated costs needed to install a fluoridation system; or
 "(2) The water system received sufficient capital funds from a source identified by the Department and not excluded by Health and Safety Code section 116415 and subsequently installed a fluoridation system . . . and the water system did not receive sufficient funds from a source identified by the Department and not excluded by Health and Safety Code section 116415 to cover the noncapital operation and maintenance costs to fluoridate. The water system shall be exempted for any fiscal year (July 1 through June 30) for which it does not receive the funds for noncapital operation and maintenance costs." (Italics added.)
It is apparent that the Department has interpreted section116415 to require installation of a fluoridation system when the capital funds become available, even if funds for operating and maintaining the system are not then available. This is a reasonable construction of section 116415 by the agency which must enforce it.
We therefore conclude that a conflict initially arises between state law and a city ordinance prohibiting water fluoridation when the Department identifies an outside source of funds sufficient to pay the capital and associated costs of installing a fluoridation system and the funding is made available to the city. The city must install a fluoridation system and must complete the installation within two years thereafter unless an extension has been granted by the Department. Once a system has been installed, the city may obtain an exemption from operating the system for any fiscal year in which operation and maintenance funds from an outside source are unavailable. (§116415, subd. (a)(1)(B); Reg 64433, subd. (f)(2).)[3]
[1] All references hereafter to the Health and Safety Code are by section number only.
[2] All references hereafter to title 22 of the California Code of Regulations are by regulation number only.
[3] Additional questions were submitted concerning the interpretation and application of the charter provisions of the city in question, such as what is the procedure for repealing the city's ordinances. These questions are more appropriately addressed to the city attorney. (66 Ops.Cal.Atty.Gen. Foreword, p. IV (1983).)