[No. H028111. Sixth Dist. Oct. 26, 2005.]

CITY OF WATSONVILLE, Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH SERVICES, Defendant and
Respondent;
CALIFORNIA DENTAL ASSOCIATION, Intervener and Respondent.

878

## COUNSEL

Grunsky, Ebey, Farrar & Howell, Alan J. Smith and Leslie J. Karst for Plaintiff and Appellant.

Nick Bulaich as Amicus Curiae on behalf of Plaintiff and Appellant.

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, and Christopher E. Krueger, Deputy Attorney General, for Defendant and Respondent.

Morrison & Foerster, Howard B. Soloway, Rachel P. Williams, Paul F. Coyne and Erika L. Labit for Interveners and Respondents.

**OPINION**

**PREMO, J.**—In November 2002, the voters of the City of Watsonville (City) passed a ballot initiative known as Measure S. Measure S prohibits introduction of any substance into City's water supply unless the substance conforms to listed requirements. We hold that to the extent Measure S applies to fluoridation it is preempted by state law.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In the fall of 2002, City was poised to begin a water fluoridation project when City's voters passed Measure S and halted City's fluoridation efforts. Measure S prohibits introducing any substance into City's drinking water (other than substances used to make the water safe to drink) unless, among other things, the United States Food and Drug Administration (FDA) has approved the substance for safety and effectiveness.[2] Since the FDA does not regulate additives to public water supplies and has never specifically approved the use of fluoride as an additive to public water supplies, Measure S effectively prohibits fluoridation. There is no question that the initiative was designed for that purpose.

■ City had begun its fluoridation project as required by Health and Safety Code sections 116410 and 116415.[3] Section 116410 requires fluoridation of public water systems having at least 10,000 service connections and authorizes the California Department of Health Services (DHS) to adopt regulations to implement that requirement. (§ 116410, subd. (a); Cal. Code Regs., tit. 22, § 64433.) Section 116415 provides that a public water system is not required to fluoridate if sufficient funding is not available from an outside

---

[1] We take our factual summary from the agreed set of facts upon which the matter was tried.

[2] Measure S was enacted as Ordinance No. 1151-02 and added to the Watsonville Municipal Code as section 6-3.443, effective December 6, 2002. The measure provides in full as follows: "In order to ensure that the public water of Watsonville is safe to drink, it shall be unlawful and a public nuisance for any person, agent, or any public or private water system, to add any product, substance, or chemical to the public water supply for the purpose of treating or affecting the physical or mental functions of the body of any person, rather than to make water safe or potable, unless the substance meets the following criteria: [¶] 1) The substance must have been specifically approved by the U.S. Food and Drug Administration for safety and effectiveness with a margin of safety that is protective for all adverse health and cosmetic effects at all ranges of unrestricted consumption. [¶] 2) The substance, at Maximum Use Levels, must contain no contaminants at concentrations that exceed U.S. Maximum Contaminant Level Goals or California Public Health Goals, whichever is more protective. [¶] If any provision of this act or the application thereof to any person or circumstance is held invalid, that invalidity may not affect other provisions or applications of this act that can be given effect without the invalid provision or application, and to this end the provisions of this act are severable."

[3] All further statutory references are to the Health and Safety Code.

source. (§ 116415, subd. (a)(1)(A).) Outside sources may include federal block grants or donations from private foundations. (§ 116415, subd. (e).) Outside sources do not include a system's ratepayers or local taxpayers. (§ 116415, subd. (a)(1)(A).)[4]

City's water system meets the size requirements of section 116410 and funding had been offered by an outside source—the California Dental Association Foundation, but since the newly passed voter initiative prohibited fluoridation, City ceased work on the project and terminated the funding agreement. DHS issued an order directing City to fluoridate as required by section 116410. Because City could not comply with the DHS order without violating Measure S, City filed the instant action.

City's complaint sought declaratory and injunctive relief. City requested a declaration that Measure S "is valid and enforceable and does not conflict with State law, and is not preempted" and that City could legally prohibit the fluoridation of its public water supply. The requested injunction was to "[p]ermanently enjoin [DHS], from enforcing its Compliance Order." The California Dental Association Foundation and the California Dental Association, both of which have worked to promote fluoridation throughout the state, successfully sought leave to intervene.

The trial court concluded that Measure S was preempted by state law and that City was not exempt from its requirements. City has timely appealed.

## II. DISCUSSION

### A. Issue and Standard of Review

■ The only issue before us is whether Measure S is preempted by state law.[5] This is a pure question of law subject to de novo review. (*Gonzales v. City of San Jose* (2004) 125 Cal.App.4th 1127, 1133 [23 Cal.Rptr.3d 178].)

---

[4] The full text of sections 116409 through 116415 is set forth in the appendix.

[5] We granted permission for amicus curiae, Nick Bulaich, a Watsonville resident, to file a brief in support of City. Amicus curiae contends that Measure S does not prohibit fluoridation while the parties to this appeal agree that the purpose and effect of Measure S is to prohibit the fluoridation of City's water supply. Amicus curiae also makes a number of factual contentions in support of his argument that City is exempt from or otherwise should not be compelled to comply with the state's fluoridation requirements for reasons other than the prohibition contained in Measure S. However, City's only argument on appeal is that Measure S is enforceable because it is not preempted by state law.

The rule is that an appellate court considers only those questions properly raised by the appealing parties. (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274–1275 [36 Cal.Rptr.2d 404] and cases cited therein.) Accordingly, we decline to consider issues raised by amicus curiae that have not been raised by City.

## B. *Preemption Analysis*

█ City is a charter city. As such, City may "make and enforce all ordinances and regulations in respect to municipal affairs" subject only to restrictions and limitations provided in its charter. (Cal. Const., art. XI, § 5, subd. (a).) City ordinances and regulations pertaining to municipal affairs supersede all inconsistent laws. (*Ibid.*) However, a state law regulating a matter of statewide concern preempts a conflicting local ordinance or regulation if the state law is reasonably related to the resolution of the statewide concern and is narrowly tailored to limit incursion into legitimate municipal interests. (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 404 [14 Cal.Rptr.2d 470, 841 P.2d 990].) This is so even where the local measure involves a traditionally municipal affair. Where the subject of the local law implicates a municipal affair and poses a genuine conflict with state law, "the question of statewide concern is the bedrock inquiry through which the conflict between state and local interests is adjusted." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 17 [283 Cal.Rptr. 569, 812 P.2d 916] (*Cal. Fed.*).) If the subject of the state law does not qualify as a statewide concern, then the conflicting charter city measure is beyond the reach of the state law. (*Ibid.*) "If, however, the court is persuaded that the subject of the state statute is one of statewide concern and that the statute is reasonably related to its resolution, then the conflicting charter city measure ceases to be a 'municipal affair' pro tanto and the Legislature is not prohibited by article XI, section 5 [subdivision] (a), from addressing the statewide dimension by its own tailored enactments." (*Ibid.*)

## C. *Measure S Actually Conflicts with State Law*

█ We begin the analysis by determining whether there is an actual conflict between Measure S and the state statute. If there is no true conflict, "a choice between the conclusions 'municipal affair' and 'statewide concern' is not required." (*Cal. Fed., supra*, 54 Cal.3d at p. 16.)

█ There is a conflict between a state law and a local ordinance if the ordinance duplicates or contradicts the state law, or if the ordinance enters an area fully occupied by general law, either expressly or by implication. (*American Financial Services Assn v. City of Oakland* (2005) 34 Cal.4th 1239, 1251 [23 Cal.Rptr.3d 453, 104 P.3d 813].) There is an actual conflict in this case because state law fully occupies the area of fluoridation of public

water systems having more than 10,000 hookups. The Legislature's express intent to fully occupy the area appears in section 116409: "It is the intent of the Legislature in enacting this article to preempt local government regulations, ordinances, and initiatives that prohibit or restrict the fluoridation of drinking water by public water systems with 10,000 or more service connections . . . ." (§ 116409, subd. (b).)

■ The Legislature added section 116409 to the Health and Safety Code in 2004 as part of Senate Bill No. 96. (Stats. 2004, ch. 727, § 2.) Senate Bill No. 96 was introduced in response to local initiatives like Measure S that were designed to curtail fluoridation. (Sen. Floor Analysis, Sen. Bill No. 96 (2003–2004 Reg. Sess.) Aug. 30, 2004, p. 4 (Senate Analysis).) City argues that since section 116409 had not been enacted at the time judgment was entered in this case, it is inapplicable to our review. We disagree. It is well established that review of a judgment for injunctive relief is governed by the law in effect at the time the appellate court renders its decision. (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 14 [30 Cal.Rptr.3d 30].) Even though, as City points out, this case involves declaratory relief as well as an injunction, given the nature of the declaration requested, it is appropriate to apply the current law.

■ The reason a reviewing court applies current rather than former law when reviewing an injunctive decree is because injunctive relief operates in the future. (See 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 399, p. 324 & cases cited; see also 9 Witkin, Cal. Procedure, *supra,* Appeal, § 332, p. 373.) It would be an idle gesture to affirm an injunctive decree because it was correct when rendered, "with full knowledge that it is incorrect under existing law, and with full knowledge that, under existing law, the decree as rendered settles nothing so far as the future rights of these parties are concerned." (*Tulare Dist. v. Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 527 [45 P.2d 972].) It does not matter whether the Legislature intended the new law to be retroactive. The reviewing court is interested in the law's prospective effect since that is when the decree under review will operate.

In our view, the same reasoning applies to a judicial declaration that has purely prospective effect. A declaratory judgment is to " 'serve some practical end in quieting or stabilizing an uncertain or disputed jural relation.' " (*Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753, 760 [161 P.2d 217].) When resolution of the uncertainty at issue does not affect vested rights and operates only with respect to the future rights and duties of the

parties, we apply the law in effect at the time of review because that is the law under which the judicial declaration will have effect. Furthermore, since the Legislature enacted section 116409 having in mind the very dispute we are reviewing, we should apply the new law if it is otherwise appropriate to do so. (Cf. *Texas Co. v. Brown* (1922) 258 U.S. 466, 473–474 [66 L.Ed. 721, 42 S.Ct. 375].) It would certainly be an idle act to measure City's ordinance against former state law when the question is whether City may legally enforce its ordinance now and in the future. Resolution of that question will not affect any vested rights. Thus, the appropriate way to determine whether Measure S conflicts with the state law is to examine the law as it currently exists.

Notwithstanding the Legislature's express intent to preempt local fluoridation ordinances, City argues that there is no actual conflict. City contends that there are insufficient funds available to pay for a fluoridation system, which means that section 116410 does not require City to fluoridate, which, in turn, means that City may lawfully enforce Measure S and prohibit fluoridation. Therefore, according to City, there is no actual conflict and Measure S is not preempted. In the same vein, City argues that it is not yet required to fluoridate because it is not at the top of the fluoridation priority list set forth in the regulations.[6] City's argument is beside the point. There is an actual conflict between Measure S and the state law because Measure S purports to regulate an area that is fully occupied by express provisions of the state law. That is, since Measure S purports to regulate fluoridation, it conflicts with the state law regardless of whether or not City is presently exempt from the fluoridation requirements of section 116410.

■ City also contends that the Legislature has not fully occupied the field of fluoridation because the state law does not encompass the numerous public water systems that have fewer than 10,000 hookups. This argument, too, misses the mark. The Legislature has chosen to define the field as fluoridation of public water systems having 10,000 service connections or more. Pursuant

---

[6] California Code of Regulations, title 22, section 64434 states: "Public water systems with 10,000 service connections or more that are not fluoridating as of July 1, 1996, shall install fluoridation systems and initiate fluoridation according to the order established in Table 64434-A, as the water systems receive funds from sources identified by the Department, pursuant to Health and Safety Code section 116415." The 2004 amendments to section 116410 (Stats. 2004, ch. 727, § 3) clarify that the purpose of the referenced table "is not to mandate the order in which public water systems receiving funding from private sources must fluoridate their water. Available funds may be offered to any system on the schedule." (§ 116410, subd. (c).)

to settled preemption analysis, any local attempt to regulate within the field that the Legislature has expressly occupied in full actually conflicts with the state law. Since Measure S would affect the fluoridation of a public water system having more than 10,000 service connections, Measure S conflicts with the state law.

### D. *Fluoridation of Public Water Systems Is a Statewide Concern*

When there is a true conflict between a charter city measure and a state statute, the next question is whether the subject of the conflicting laws is one of statewide concern. (*Johnson v. Bradley, supra,* 4 Cal.4th at p. 404.) In this case, the Legislature has declared: "Promotion of the public health of Californians of all ages by protection and maintenance of dental health through the fluoridation of drinking water is a paramount issue of statewide concern." (§ 116409, subd. (a).) Section 116410, subdivision (a) reiterates that concern where it states that qualifying public water systems must be fluoridated "in order to promote the public health of Californians of all ages through the protection and maintenance of dental health, a paramount issue of statewide concern." Although we give these pronouncements great weight, they are not controlling. (*Domar Electric, Inc. v. City of Los Angeles* (1995) 41 Cal.App.4th 810, 821–822 [48 Cal.Rptr.2d 822].) "[T]he hinge of the decision is the identification of a convincing basis for legislative action originating in extramunicipal concerns." (*Cal. Fed., supra,* 54 Cal.3d at p. 18.)

Fluoride is introduced into the water supply for the purpose of preventing tooth decay. (*Beck v. City Council of Beverly Hills* (1973) 30 Cal.App.3d 112, 113 [106 Cal.Rptr. 163].) "Courts through the United States have uniformly held that fluoridation of water is a reasonable and proper exercise of the police power in the interest of public health." (*Id.* at p. 115.) Although the *Beck* court stated over 30 years ago that the matter "is no longer an open question" (*ibid.*), fluoridation battles such as this one continue to erupt. The two primary issues involved in these disputes are the concerns of public health and water quality. (Sen. Analysis, *supra,* at pp. 4–5.)

Public health and water quality are matters of statewide concern. (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 108 [223 Cal.Rptr. 609]; *Lewis Food Co. v. State of California* (1952) 110 Cal.App.2d 759, 762 [243 P.2d 802]; *California Water & Telephone Co. v.*

*County of Los Angeles* (1967) 253 Cal.App.2d 16, 30–31 [61 Cal.Rptr. 618].) Of course, City has a vital interest in the health and safety of its inhabitants and in the quality of the water they drink and, therefore, both concerns may be deemed municipal affairs. We are convinced, however, that the state's extramunicipal concerns tip the scales in favor of statewide regulation of water fluoridation.

■ One factor that makes fluoridation a matter of statewide concern is the need for uniform standards for water quality. The introduction of any substance, including fluoride, into the public drinking water necessarily implicates the quality of the water. Indeed, the California Safe Drinking Water Act (§ 116270 et seq.) defines "contaminant" as "any physical, chemical, biological, or radiological substance or matter in water." (§ 116275, subd. (a).) DHS is the agency responsible for the quality of the public drinking water supply. (§ 116270, subd. (g).) Pursuant to its legislative mandate, DHS has developed comprehensive drinking water standards, which include standards for fluoride. (Cal. Code Regs., tit. 22, §§ 64431–64432.)

■ As the appellate court stated in *Paredes v. County of Fresno* (1988) 203 Cal.App.3d 1, 10 [249 Cal.Rptr. 593] (*Paredes*): "[T]he Legislature has assigned to the DHS the duty to set standards regarding unhealthy levels of contaminants in drinking water. Local decisions on the same subject, varying from county to county, cannot be justified." *Paredes* recognized that in *People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 486 [204 Cal.Rptr. 897, 683 P.2d 1150], the Supreme Court permitted local regulation of aerial spraying of herbicides because differences such as the location of schools, dwellings, hospitals, and recreational areas required local flexibility. *Paredes* distinguished that holding, noting: "In contrast, the degree of permissible levels of water contaminants depends upon scientific expertise and judgment which, difficult as that may be to resolve, applies generally to all users of water statewide. . . . [T]he Legislature has dictated that statewide standards be set, and thus made it clear local health officers are to be concerned with enforcing, not creating, such standards." (*Paredes*, *supra*, 203 Cal.App.3d at pp. 10–11.)

■ The reasoning of *Paredes* is directly applicable in this case. Setting permissible levels for fluoride in the drinking water is no different than setting standards for any other substance in the water. It requires scientific expertise that applies generally to all users and does not require local flexibility. The only purely local issue of which we are aware is the possible

existence of naturally occurring fluoride. Section 116410, subdivision (a), however, expressly excludes from its scope any water system having natural fluoride in excess of specified levels. On the other hand, citizens throughout the state are entitled to the assurance that the water they receive conforms to all current public health standards. A patchwork of inconsistent local measures cannot provide that assurance.

■ Another issue that makes fluoridation of the drinking water supply a statewide concern is the cost of healthcare. The Legislature has declared that one of the purposes of section 116410 is to "decrease the burden the Medi-Cal and the Denti-Cal programs place upon the state's limited funds." (§ 116409, subd. (c).) This is, unquestionably, a statewide issue. Indeed, the stated purpose of the sponsor of the legislation was to "prevent a major economic health problem in California—tooth decay. . . . [¶] Tooth decay affects 90 percent of our population and it's estimated that it will cost our state Denti-Cal program approximately $800 million this year. Of this amount, nearly half will be spent treating dental disease that can be prevented." (Sen. Health Com., Statement by Assem. Member Speier, sponsor of Assem. Bill. No. 733 (1995–1996 Reg. Sess.).)

In view of these circumstances and concerns and the Legislature's express findings, we conclude that fluoridation of the state's public water systems for the purpose of improving the dental health of the state's citizens is a matter of statewide concern.

E. *State Law Is Reasonably Related and Narrowly Tailored*
*to the Statewide Concern*

We now consider whether the state law is reasonably related to the identified statewide concern and narrowly tailored to avoid infringing legitimate municipal affairs. City implicitly concedes the reasonableness of the relationship because its argument is directed solely to the final question, whether the state's requirements are narrowly tailored.

■ City argues that the state law is not narrowly tailored to the state's interest in improving the dental health of children since fluoridated water will affect all users. City also argues that there are "other, less intrusive means" of improving dental health, such as programs for topical fluoride and dental

disease prevention programs in schools. These arguments are unavailing. First, the Legislature has clarified that the state's interest is in the dental health of all Californians, not just children. (§ 116410, subd. (a).) Second, in articulating the test for preemption the Supreme Court was concerned with ensuring that a state law does not infringe legitimate municipal interests other than that which the state law purports to regulate as a statewide interest. (*Johnson v. Bradley, supra,* 4 Cal.4th at p. 404.) City's arguments, therefore, do not bear upon the question before us. Although the state law unquestionably interferes with City's interest in regulating fluoride in its water supply, as we have explained, regulating fluoridation is a statewide concern that overrides City's municipal interest in the subject. It is immaterial that there may be redundancies or overlap among state laws so long as the state law in question does not infringe City's other municipal interests.

The only other municipal interest City cites is the possibility that third parties could "usurp authority over a city's local affairs." City is referring here to the provision in section 116415, subdivision (e)(2) that requires DHS to seek funding for implementation of fluoridation programs from various sources, including private foundations such as the California Dental Association Foundation. City complains that private funding sources may impose terms and conditions within their funding agreements that would dictate the manner in which City could operate its fluoridation program. The problem, as City sees it, is that third parties might have their own financial interests in mind so that a funding offer could require the use of a specific industry source for fluoride, which, according to City, could result in "over-inflated costs," or the "use of inferior products which could jeopardize the quality of the local water supply."

 City's concerns are speculative and unrealistic. Standards for water quality are set by the state and enforced locally. (§ 116270 et seq.; *Paredes, supra,* 203 Cal.App.3d at p. 11.) Fluoridation costs are determined by the water system subject to review by DHS. (§§ 116410, subds. (a), (d), 116415, subds. (a)(1)(C), (g).) The state law provision that allows for third party funding merely facilitates funding of a mandated fluoridation project while leaving control of cost and quality issues to the appropriate local and state agencies.

 In short, the state's water fluoridation law (§ 116409 et seq.) affects only the statewide interest of promoting public health by protecting and maintaining dental health while insuring the quality of the state's drinking water. It has no significant effect on other legitimate municipal affairs.

### III. Conclusion

■ To the extent Measure S affects fluoridation of City's public water system, it is preempted by section 116409 et seq. and is, therefore, void and without effect.

### IV. Disposition

The judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 8, 2006, S139379. Chin, J., did not participate therein.

# Appendix

*Health and Safety Code section 116409:*
The Legislature finds and declares all of the following:

(a) Promotion of the public health of Californians of all ages by protection and maintenance of dental health through the fluoridation of drinking water is a paramount issue of statewide concern.

(b) It is the intent of the Legislature in enacting this article to preempt local government regulations, ordinances, and initiatives that prohibit or restrict the fluoridation of drinking water by public water systems with 10,000 or more service connections, without regard to whether the public water system might otherwise be exempt from Section 116410 or the requirements of this section, pursuant to Section 116415.

(c) It is further the intent of the Legislature in establishing this article to decrease the burden the Medi-Cal and the Denti-Cal programs place upon the state's limited funds.

*Health and Safety Code section 116410:*

(a) Each public water system with at least 10,000 service connections and with a natural level of fluorides that is less than the minimum established in the regulations adopted pursuant to this section shall be fluoridated in order to promote the public health of Californians of all ages through the protection and maintenance of dental health, a paramount issue of statewide concern. The department shall adopt regulations pursuant to Chapter 3.5 (commencing with Section 11340) of Division 3 of Title 2 of the Government Code, requiring the fluoridation of public water systems. By July 1, 1996, and at 10-year intervals thereafter, each public water system with at least 10,000 service connections shall provide to the department an estimate of the total capital costs to install fluoridation treatment. The regulations adopted by the department shall take effect on January 1, 1997. Capital costs estimates are no longer required after installation of the fluoridation treatment equipment.

(b) The regulations shall include, but not be limited to, the following:

(1) Minimum and maximum permissible concentrations of fluoride to be maintained by fluoridation of public water systems.

(2) The requirements and procedures for maintaining proper concentrations of fluoride, including equipment, testing, recordkeeping, and reporting.

(3) Requirements for the addition of fluorides to public water systems in which the natural level of fluorides is less than the minimum level established in the regulations.

(4) A schedule for the fluoridation of public water systems with at least 10,000 service connections, based on the lowest capital cost per connection for each system.

(c) The purpose of the schedule established pursuant to paragraph (4) of subdivision (b) is not to mandate the order in which public water systems receiving funding from private sources must fluoridate their water. Available funds may be offered to any system on the schedule.

(d) The estimates provided to the department pursuant to subdivision (a) of this section and subdivision (g) of Section 116415 of the total capital and associated costs and noncapital operation and maintenance costs related to fluoridation treatments and the similar estimates provided to those sources offering to provide the funds set forth in paragraph (1) of subdivision (a) of Section 116415 shall be reasonable, as determined by the department. A registered civil engineer recognized or employed by the department who is familiar with the design, construction, operation, and maintenance of fluoridations systems shall determine for the department whether the costs are reasonable.

(e) As used in this section and Section 116415, "costs" means only those costs that require an actual expenditure of funds or resources, and do not include costs that are intangible or speculative, including, but not limited to, opportunity or indemnification costs.

(f) Any public water system with multiple water sources, when funding is not received to fluoridate all sources, is exempt from maintaining otherwise required fluoridations levels in areas receiving any nonfluoridated water. The exemption shall be in effect only until the public water system receives funding to fluoridate the entire water system and the treatment facilities are installed and operational.

*Health and Safety Code section 116415:*

(a)(1) A public water system is not required to fluoridate pursuant to Section 116410, or the regulations adopted thereunder by the department, in any of the following situations:

(A) If the public water system is listed on the schedule to implement a fluoridation program pursuant to paragraph (4) of subdivision (b) of Section

116410 and funds are not offered pursuant to a binding contractual offer to the public water system sufficient to pay the capital and associated costs from any outside source. As used in this section, "outside source" means a source other than the system's ratepayers, shareholders, local taxpayers, bondholders, or any fees or charges levied by the water system.

(B) If the public water system has been offered pursuant to a binding contractual offer the capital and associated funds necessary for fluoridation as set forth in subparagraph (A) and has completed the installation of a fluoridation system, however, in any given fiscal year (July 1–June 30, inclusive) funding is not available to the public water system sufficient to pay the noncapital operation and maintenance costs described in subdivision (g) from any outside source other than the system's ratepayers, shareholders, local taxpayers, bondholders, or any fees or charges levied by the water system. A binding contractual offer to provide funds for 12 months, without regard to fiscal year, of noncapital operation and maintenance costs shall render a water system unqualified for an exemption under this subparagraph for that year.

(C) If the funding provided by an outside source for capital and associated costs is depleted prior to completion of the installation of a fluoridation system and funds sufficient to complete the installation have not been offered pursuant to a binding contractual offer to the public water system by an outside source. In the event of a disagreement between the public water system and an outside funding source about the reasonableness of additional capital and associated costs, in order to qualify for an exemption under this subparagraph the costs overruns must be found to be reasonable by a registered civil engineer recognized or employed by the department who is familiar with the design, construction, operation, and maintenance of fluoridation systems.

(2) Each year the department shall prepare and distribute a list of those water systems that do not qualify for exemption under this section from the fluoridation requirements of Section 116410. This list shall include water systems that have been offered, have received, or are expected to receive, sufficient funding for capital and associated costs so as to not qualify for exemption under subparagraph (A) of paragraph (1), and have either (A) been offered or have received, or anticipate receiving, sufficient noncapital maintenance and operation funding pursuant to subdivision (g), or (B) have not yet completed the installation of a fluoridation system, so that they do not qualify for exemption under subparagraph (B) of paragraph (1).

(3) Any water system that has been offered pursuant to a binding contractual offer the funds necessary for fluoridation as set forth in subparagraph (A) of

paragraph (1), and is not included in the list pursuant to paragraph (2), may elect to exercise the option not to fluoridate during the following fiscal year pursuant to subparagraph (B) of paragraph (1) by so notifying the department by certified mail on or before June 1.

(4) The permit issued by the department for a public water system that is scheduled to implement fluoridation pursuant to paragraph (4) of subdivision (b) of Section 116410 shall specify whether it is required to fluoridate pursuant to Section 116410, or whether it has been granted an exemption pursuant to either subparagraph (A) or subparagraph (B) of paragraph (1).

(b) The department shall enforce Section 116410 and this section, and all regulations adopted pursuant to these sections, unless delegated pursuant to a local primary agreement.

(c) If the owner or operator of any public water system subject to Section 116410 fails, or refuses, to comply with any regulations adopted pursuant to Section 116410, or any order of the department implementing these regulations, the Attorney General shall, upon the request of the department, institute mandamus proceedings, or other appropriate proceedings, in order to compel compliance with the order, rule, or regulation. This remedy shall be in addition to all other authorized remedies or sanctions.

(d) Neither this section nor Section 116410 shall supersede subdivision (b) of Section 116410.

(e) The department shall seek all sources of funding for enforcement of the standards and capital cost requirements established pursuant to this section and Section 116410, including, but not limited to, all of the following:

(1) Federal block grants.

(2) Donations from private foundations.

Expenditures from governmental sources shall be subject to specific appropriation by the Legislature for these purposes.

(f) A public water system with less than 10,000 service connections may elect to comply with the standards, compliance requirements, and regulations for fluoridation established pursuant to this section and Section 116410.

(g) Costs, other than capital costs, incurred in complying with this section and Section 116410, including regulations adopted pursuant to those sections, may be paid from federal grants, or donations from private foundations, for these purposes. Each public water system that will incur costs, other than capitalization costs, as a result of compliance with this section and Section 116410, shall provide an estimate to the department of the anticipated total annual operations and maintenance costs related to fluoridation treatment by January 1 of each year.

(h) A public water system subject to the jurisdiction of the Public Utilities Commission shall be entitled to recover from its customers all of its capital and associated costs, and all of its operation and maintenance expenses associated with compliance with this section and Section 116410. The Public Utilities Commission shall approve rate increases for an owner or operator of a public water system that is subject to its jurisdiction within 45 days of the filing of an application or an advice letter, in accordance with the commission's requirements, showing in reasonable detail the amount of additional revenue required to recover the foregoing capital and associated costs, and operation and maintenance expenses.