EDMUND G. BROWN JR. Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE TOM HARMAN, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. May the Department of Alcohol and Drug Programs deny an application for licensure or suspend or revoke the license of an alcoholism or drug abuse treatment facility because the particular community already has more than a sufficient number of treatment facilities to meet the local need?
2. May a city limit the establishment of alcoholism or drug abuse treatment facilities serving six or fewer persons because the particular community already has more than a sufficient number of treatment facilities to meet the local need? *Page 2 
 CONCLUSIONS
1. The Department of Alcohol and Drug Programs may not deny an application for licensure or suspend or revoke the license of an alcoholism or drug abuse treatment facility because the particular community already has more than a sufficient number of treatment facilities to meet the local need.
2. A city may not limit the establishment of alcoholism or drug abuse treatment facilities serving six or fewer persons because the particular community already has more than a sufficient number of treatment facilities to meet the local need.
 ANALYSIS
The Department of Alcohol and Drug Programs (Health Saf Code, § 11750; "Department")[1] licenses residential facilities that provide nonmedical recovery, treatment, and detoxification services for users of alcohol and other drugs. (§§ 11834.01-11834.50; Cal. Code Regs., tit. 9, §§ 10500-10631; 76 Ops.Cal.Atty.Gen. 173, 175 (1993).) Such a treatment facility is defined as "any premises, place, or building that provides 24-hour residential nonmedical services to adults who are recovering from problems related to alcohol, drug, or alcohol and drug misuse or abuse, and who need alcohol, drug, or alcohol and drug recovery treatment or detoxification services." (§ 11834.02, subd. (a); see Cal. Code Regs., tit. 9, § 10501.)
These treatment facilities are different from residential care facilities that are subject to the California Community Care Facilities Act (§§ 1500-1567.8) and from facilities that simply provide a cooperative living arrangement for persons recovering from alcohol and other drug problems. The latter "sober living environments" are not subject to licensing by the Department.
We are asked to determine whether the Department has the authority to deny an application for operating a treatment facility because the particular community already has more than a sufficient number of treatment facilities to meet the local need. Additionally, may a city limit the number of treatment facilities within its jurisdiction to prevent an overconcentration of such facilities? *Page 3 
1. Department's Authority to Deny Licenses
With respect to the scope of the Department's authority to limit the licensing of treatment facilities, we will assume that the extent of the local need is ascertainable through an appropriate fact-finding process, and the determination will be based upon the incidence of alcoholism and drug abuse and the percentage of substance abusers seeking treatment in the community. What authority does the Department have to prevent an overconcentration of treatment facilities in a particular locality?
Section 11834.01 states in part:
 The department has the sole authority in state government to license adult alcoholism or drug abuse recovery or treatment facilities.
 (a) In administering this chapter, the department shall issue new licenses for a period of two years to those programs that meet the criteria for licensure set forth in Section 11834.03.
Section 11834.03, in turn, provides:
 Any person or entity applying for licensure shall file with the department, on forms provided by the department, all of the following:
 (a) A completed written application for licensure.
 (b) A fire clearance approved by the State Fire Marshal or local fire enforcement officer.
 (c) A licensure fee, established in accordance with Chapter 7.3 (commencing with Section 11833.01).
Accordingly, each licensure applicant must complete an application form, obtain a fire clearance, and pay a fee to the Department. (See also § 11834.09, subd. (b).) Sections 11834.01 and 11834.03 provide no authority for the Department to deny a license because the community already has an overconcentration of such facilities.
The Department is also authorized to determine "that the prospective licensee can comply with this chapter and regulations adopted pursuant to this chapter" before issuing a license. (§ 11834.09, subd. (a).) Subdivision (c) of section 11834.09 states: *Page 4 
 Failure of the prospective licensee to demonstrate the ability to comply with this chapter or the regulations adopted pursuant to this chapter shall result in departmental denial of the prospective licensee's application for licensure.
Thus, a prospective licensee may be denied a license if he or she fails to demonstrate "the ability to comply" with sections 11834.01-11834.50 and the Department's regulations. However, neither the statutory scheme nor the implementing regulations make any reference to a community's current level of need for treatment facilities or to the sufficiency of existing facilities to meet the local need. No basis for the denial of an application is given in section 11834.09 other than the inability of the applicant to comply with the requirements for operating a facility.
Next, we examine the Department's authority to suspend, revoke, or deny a license contained in subdivision (a) of section 11834.36, which states:
 The director may suspend or revoke any license issued under this chapter, or deny an application for licensure, for extension of the licensing period, or to modify the terms and conditions of a license, upon any of the following grounds and in the manner provided in this chapter:
 (1) Violation by the licensee of any provision of this chapter or regulations adopted pursuant to this chapter.
 (2) Repeated violation by the licensee of any of the provisions of this chapter or regulations adopted pursuant to this chapter.
 (3) Aiding, abetting, or permitting the violation of, or any repeated violation of, any of the provisions described in paragraph (1) or (2).
 (4) Conduct in the operation of an alcoholism or drug abuse recovery or treatment facility that is inimical to the health, morals, welfare, or safety of either an individual in, or receiving services from, the facility or to the people of the State of California.
 (5) Misrepresentation of any material fact in obtaining the alcoholism or drug abuse recovery or treatment facility license.
 (6) Failure to pay any civil penalties assessed by the department. *Page 5 
All of the grounds specified in section 11834.36 involve theconduct of the license holder or applicant. None focuses upon whether the community already has a sufficient number of facilities to meet the local need.
We recognize that a community's need for treatment facilities is mentioned in section 11834.20: "The Legislature hereby declares that it is the policy of this state that each county and city shall permit and encourage the development of sufficient numbers and types of alcoholism or drug abuse recovery or treatment facilities as are commensurate with local need." However, this reference is only an expression of legislative intent that cities should encourage development of treatment facilities, and cannot be reasonably read to impose a limit on such development. The affirmative policy articulated by the Legislature in section 11834.20 does not afford a basis for denying a license where the applicant meets all basic qualifications for the license.
As stated in Ferdig v. State Personnel Board (1969) 71 Cal.2d 96,103-104: "It is settled principle that administrative agencies have only such powers as have been conferred upon them, expressly or by implication, by constitution or statute. [Citations.] An administrative agency, therefore, must act within the powers conferred upon it by law and may not validly act in excess of such powers." (See76 Ops.Cal.Atty.Gen. 11, 15-16 (1993).) And, of course, we are not at liberty to add, in the guise of statutory interpretation, an additional licensing requirement. (See 89 Ops.Cal.Atty.Gen. 159, 165; 83 Ops.Cal.Atty.Gen. Ill, 116 (2000); 82 Ops.Cal.Atty.Gen. 246, 248 (1999); 78 Ops.Cal.Atty.Gen. 137,142(1995).) Here, the Legislature has not given the Department any authority to consider the number of treatment facilities in a particular area when granting, suspending, or revoking a license to operate a treatment facility.
Finally, we note that the California Community Care Facilities Act, referenced above, requires the Department of Social Services to take "overconcentration" of residential care facilities into account when making its licensing decisions for such facilities. (§ 1520.5.) If the Legislature wishes to grant a similar authorization when the Department licenses the treatment facilities in question, it knows how to do so. (See Safer v. Superior Court (1975) 15 Cal.3d230,231-23%; Board ofTrustees v. Judge (1975) 50 Cal.App.3d920, 927; 73 Ops.Cal.Atty.Gen. 13,23 (1990).)
We conclude in answer to the first question that the Department may not deny an application for licensure or suspend or revoke the license of a treatment facility because the particular community already has more than a sufficient number of treatment facilities to meet the local need. *Page 6 
2. City's Authority to Limit Treatment Facilities
The second question concerns whether a city may limit the number of treatment facilities serving six or fewer persons within its boundaries. For example, may a city enact an ordinance requiring that in addition to licensure by the Department, the prospective operator of a treatment facility must obtain the city's approval if the facility will be located within 500 feet of an existing treatment facility? We conclude that it may not.
The Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) The rules to be applied in determining whether a city's ordinances would conflict with general laws were recently summarized in California Veterinary Medical Assn. v. City of WestHollywood (2QQ1) 152 Cal.App.4th 536, 548:
 The California Constitution reserves to a county or city the right to "make and enforce within its limits all local police, sanitary, and other ordinances and regulations not in conflict with general laws." [Citation; footnote omitted.] `"If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.'" [Citations.] A prohibited conflict exists if the local ordinance duplicates or contradicts general law or "enters an area either expressly or impliedly fully occupied by general law." [Citations.]
 `"[I]t is well settled that local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute.' [Citation.] `[L]ocal legislation enters an area that is "fully occupied" by general law when the Legislature has expressly manifested its intent to "fully occupy" the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality [citations].' [Citation.]" [Citation.] *Page 7 
With these principles in mind, we return to the provisions of sections 11834.01-11834.50. Two statutes are relevant to our inquiry. First, section 11834.22 provides that treatment facilities serving six or fewer persons may not be made subject to any business taxes, local registration fees, use permit fees, or other fees to which ordinary single-family dwellings are not subject. Second, and even more in point, section 11834.23 states with respect to local zoning ordinances governing such facilities:
 Whether or not unrelated persons are living together, an alcoholism or drug abuse recovery or treatment facility which serves six or fewer persons shall be considered a residential use of property for the purposes of this article. In addition, the residents and operators of such a facility shall be considered a family for the purposes of any law or zoning ordinance which relates to the residential use of property pursuant to this article.
 For the purpose of all local ordinances, an alcoholism or drug abuse recovery or treatment facility which serves six or fewer persons shall not be included within the definition of a boarding house, rooming house, institution or home for the care of minors, the aged, or the mentally infirm, foster care home, guest home, rest home, sanitarium, mental hygiene home, or other similar term which implies that the alcoholism or drug abuse recovery or treatment home is a business run for profit or differs in any other way from a single-family residence.
 This section shall not be construed to forbid any city, county, or other local public entity from placing restrictions on building heights, setback, lot dimensions, or placement of signs of an alcoholism or drug abuse recovery or treatment facility which serves six or fewer persons as long as the restrictions are identical to those applied to other single-family residences.
 This section shall not be construed to forbid the application to an alcoholism or drug abuse recovery or treatment facility of any local ordinance which deals with health and safety, building standards, environmental impact standards, or any other matter within the jurisdiction of a local public entity. However, the ordinance shall not distinguish alcoholism or drug abuse recovery or treatment facilities which serve six or fewer persons from other single-family dwellings or distinguish residents of alcoholism or drug abuse recovery or treatment facilities from persons who reside in other single-family dwellings.
 No conditional use permit, zoning variance, or other zoning clearance shall be required of an alcoholism or drug abuse recovery or treatment facility *Page 8 
which serves six or fewer persons that is not required of a single-family residence in the same zone.
Accordingly, a city may not make its land use decisions in a manner that will disadvantage treatment facilities serving six or fewer persons when compared to decisions applicable to ordinary single-family residences.
The hypothetical ordinance described above would allow the city to ban the operation of a new treatment facility within 500 feet of an existing facility. Such an ordinance would be in conflict with section 11834.23, and thus be preempted by state law. (See, e.g., Doe v. City and Countyof San Francisco (1982) 136 Cal.App.3d 509 [local law may not impose additional licensing requirements when state law specifically prohibits such requirements].)
Would our analysis and conclusion be different in the case of a charter city? A charter city, in contrast to a general law city, is not subject to state statutes involving "municipal affairs." (Cal. Const., art. XI, § 5, subd. (a); Sherwin-Williams Co. v. City of LosAngeles (1993) 4 Cal.4th 893, 897, fn. 1; California Veterinary MedicalAssn. v. City of West Hollywood, supra, 152 Cal.App.4th at p. 548, fn. 6.) "[T]his constitutional `home rule' doctrine reserves to charter cities the right to adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a `municipal affair' rather than one of `statewide concern.' [Citation.]" (Traders Sports, Inc. v. City of San Leandro (2001) 93Cal.App.4th 37, 45.)
Here, section 11834.23 has been made applicable to all cities, both general law and charter (§ 11834.20), and forbids the use of zoning or other regulatory powers to treat small treatment facilities differently from other residential dwellings (§§ 11834.22-11834.24). Section 11834.23 addresses a matter of "statewide concern" because it seeks to ensure that persons throughout the state who are recovering from problems related to alcohol or other drugs will have access to residential settings that provide treatment.
"[I]n articulating the test for preemption, the Supreme Court was concerned with ensuring that a state law does not infringe legitimate municipal interests other than that which the state law purports toregulate as a statewide interest.'" (City of Watsonville v. StateDepartment of Health Services (2005) 133 Cal.App.4th 875, 889 [state law requiring fluoridation of local water supplies narrowly tailored to state's interest in improving dental health], italics added.) Here, the state law in question has the precise aim of regulating local zoning requirements in pursuance of a statewide interest. The Legislature clearly intended to prevent local governments from applying any zoning clearances to small treatment facilities by mandating that they be treated the same as other single family residences for *Page 9 
zoning purposes. The Legislature may properly look to the statewide need, rather than the local need, to overcome a charter city's municipal interests.
We conclude in answer to the second question that a city may not limit the establishment of alcoholism or drug abuse treatment facilities serving six or fewer persons because the particular community already has more than a sufficient number of treatment facilities to meet the local need.
[1] All further references to the Health and Safety Code are by section number only.